[No. 21097.   Department Two.—July 25, 1894.]

THE PEOPLE, Respondent, v. J. D. SHERMAN, APPELLANT.

Criminal Law—Homicide—Self-defense—Verdict Against Evidence.
Where it appears from the evidence, without conflict, that a defendant accused of the crime of murder, and convicted of manslaughter, acted only in self-defense, and that the killing was justifiable, he is entitled to a new trial.

Appeal from a judgment of the Superior Court of Mendocino County.

The facts are stated in the opinion of the court.

*J. A. Cooper,* and *J. Q. White,* for Appellant.

*Attorney General W. H. H. Hart, District Attorney J. E. Pemberton,* and *J. H. Seawell,* for Respondent.

The Court.—Upon information accusing the defendant of the crime of murder he was convicted of manslaughter, and sentenced to the state prison for the term of six years. He appeals from the judgment and from an order denying his motion for a new trial.

It was proved, and not disputed, that about one o'clock, A. M., on June 20, 1893, in Mendocino county, he shot and killed G. W. Parker, but it is claimed for appellant that the killing was done in self-defense, and therefore was justifiable; and so it appears from the evidence without conflict.

It appears that six witnesses were present at the time of the killing. Of these two were called by the people, and four by the defendant; and all concur in testifying substantially that without provocation the deceased assaulted defendant with a small clasp-knife, threatening "to cut him in two"; that defendant tried to pacify him, declined to fight him, and begged him to desist; that Scott Howard, a mutual friend, interfered, took the knife from deceased, and led him to another part of the

room, about thirty feet from defendant, and endeavored to pacify him; but soon after he broke away from Howard, drew his pistol, and started towards defendant, pointing his pistol in the same direction.    Mr. Howard, the first witness for the prosecution, described this scene as follows: "I took Parker away and went down to the billiard-table at the south end of the room.    I was watching deceased.    Defendant could see myself and deceased. . . . . I was standing talking to deceased, trying to get him to go home, and he just jumped up all at once and jerked out a gun and ran around the billiard-table.    The bar of the saloon is near the north end of the saloon. The billiard-table is near the south end, some thirty feet from the bar.    I was at the end of the billiard-table, where I had taken deceased, and was trying to pacify him.    He just jumped out as quick as he could.    I ran to catch him, and did catch hold of his sleeve, but I slipped and he got past.    I says, 'Look out up there, boys.'    Just about that time I jumped back by the billiard-table, and the first shot was fired.    At that time the deceased was going around the billiard-table towards the north end of the room, and towards where the defendant was.    I could not tell the distance he was from defendant, but fifteen to twenty feet, or maybe thirty feet.    Parker had a silver-mounted pistol in his hand. I do not know how many shots were fired.    I was facing the bar when the first shot was fired.    I jumped through the partition and ran out of the building. . . . . Defendant fired the first shot. . . . . He put his arm over Dick Simmons' shoulder and fired.    Sherman was standing by the bar and near the door, within five feet of the entrance.    A screen was in front of the door.    The crowd was there by the bar.    Simmons was in front of defendant, and between him and Parker.    Defendant advanced towards deceased, and fired over Simmons' shoulder."

Gus Henry, on the part of the people, after describing the knife scene, said: "Finally, Scott Howard took Parker away, . . . . defendant, myself, and Simmons

were standing near the bar, and not far from the door. I thought the matter was all over. The defendant was standing by the bar, talking. All at once Scott was running. Scott Howard hollered, 'Look out boys.' Deceased was coming towards the defendant. He said: 'God damn you'—just got that far when defendant shot. He had his pistol up and was advancing towards defendant. As he advanced he said: 'God damn you, I'll—' I heard no more, and the shots were fired. After I saw Parker start towards the defendant with his pistol, his hand was moving up and down. I could not tell whether he was trying to work the trigger or not. There were four or five shots fired as fast as the pistol could be fired; looked like a stream of fire. After the first shot the deceased kept advancing towards the defendant till he got to the beer-chest. He kept coming and the shots kept going. As the deceased advanced towards defendant, defendant could not have shot without putting his hand out towards Simmons. Just as the shooting commenced Simmons dropped on the floor. Deceased was drinking at the time. He was always wanting to scuffle and monkey around when he was drinking. He slapped a man's face before that evening. He wants to fight when he is drinking. He could walk as straight as anybody although drinking. Deceased was a very strong man—more than an average man for strength. He always prided himself on being the best man in the saloon when drinking."

The pistol of deceased was found fully charged, and it was admitted that he did not fire a shot, though some of the witnesses thought he did at the time of the shooting.

The testimony for the prosecution of the witness Schoonover, as to an asserted declaration made by defendant previous to the homicide—contradicted as it was by two other witnesses—was of too little importance to affect the result above reached. It is not necessary, therefore, to determine whether the objection to

Schoonover's testimony should have been sustained, or whether the offered evidence of defendant's witness, Hughes, upon the same subject was properly excluded.

Judgment and order reversed.