[Civ. No. 10216. First Appellate District, Division Two.—December 1, 1936.]

GIUSEPPE FRAGUGLIA, Respondent, v. ANGELO SALA, Appellant.

O'Gara & De Martini for Appellant.

Anthony S. Devoto for Respondent.

STURTEVANT, J.—From a judgment awarding damages for assault and battery the defendant has appealed.

The fight occurred about 6:15 on Friday morning, January 11, 1935, on the south side of Cornwall Street, between Second Avenue and Third Avenue, in the Richmond district of San Francisco.

The plaintiff and defendant were stockholders and employees of the Sunset Scavenger Company. For several years they had worked together on the same garbage truck collecting garbage from customers. On the morning in question, it being his turn, Fraguglia had the job of remaining in the box of the truck and of spreading the garbage and separating and stowing away in barrels or blankets the bottles and waste paper and other salvagable material which he might find in the garbage brought in. The duty of gathering the garbage and depositing it in the truck rested upon Sala and three other men, Renati, Scocca and Campi. Renati was the so-called "boss of the truck". Sala was second in command. Scocca was a regular member of the crew and usually drove the truck, besides gathering garbage. Campi was an extra man employed, not by the company, but by the other four to lighten their labors around Christmas time when their work was particularly heavy.

The truck was halted near an electric light supported by a bracket fixed to a wooden pole rising from the sidewalk on the south side of Cornwall Street and located 104 feet 11 inches from the westerly line of Second Avenue. The truck stood near and parallel to the edge of the curb, the front of the truck facing in an easterly direction. It was still dark, but the electric light supplied the light required.

Sala returned to the truck bearing his blanket of garbage and deposited his load in the box of the truck. Fraguglia was in the box of the truck at this time. Sala spoke to Fraguglia. The two parties differ as to what words were used by Sala and just what immediately followed. Fraguglia testified that Sala said: "Are you still on the truck?" Sala testified he said: "Do I have to come in and help you?" Further words passed as to which the parties likewise differ. Fraguglia grabbed a heavy, short-handled pitchfork used for spreading the garbage and which was in a barrel standing on the floor of the box of the garbage truck. Fraguglia claims Sala reached for the fork before he, Fraguglia, got it. Sala testified he did not reach for the fork and could not have reached it if he had tried. Sala also testified that

Fraguglia cried out that he would kill Sala and made a jump and grabbed hold of the fork; that, having the fork, Fraguglia came after him to strike him, that he drew out of the way and Fraguglia sought to stick him in the stomach, whereupon he jumped down to the sidewalk. On the other hand Fraguglia testified that, taking the fork, he advanced toward Sala and ordered him to get down from the truck and that he had to tell him the second time to get down; that then Sala got down. Fraguglia testified Sala then looked in the tool box. Fraguglia in a short time, taking the pitchfork in his hand, went down. He testified he took the pitchfork with him for the purpose of protecting himself.

Sala's testimony is that after he landed on the sidewalk he started to go to gather garbage; that he heard the noise of Fraguglia's landing on the sidewalk, and turned and saw Fraguglia coming right after him with the pitchfork raised; that he faced Fraguglia who was but a few feet away and was coming after him near the front of the radiator of the truck. He also testified that Fraguglia struck at him with the pitchfork and the blow fell heavily upon Sala's left shoulder. At or about the same time Sala grasped with his left hand the handle of the pitchfork and with his right fist struck Fraguglia two or three blows in the face between the nose and the left ear, and Fraguglia fell to the pavement in front of the radiator, between the truck and the safety zone; he tried to take the pitchfork away from Fraguglia and told him twice to let go and Fraguglia refused; he did not strike or kick Fraguglia after he fell to the ground; he did not jab or poke him in the eye; and Renati and he together took the fork away from Fraguglia.

On the other hand, Fraguglia testified he walked down the steps of the truck to the pavement; that he looked to the rear of the truck for Sala and not seeing him he started to go toward the apartment house where Renati was when suddenly he saw Sala, about three feet away, rising up from a kneeling posture in front of the radiator; that Sala raised his hands and came toward him and he raised the pitchfork and told him to stand back; that he started to "retreat" and he tripped on the curb of the sidewalk; that as he was falling the pitchfork fell on Sala's shoulder; that only his right hand touched the sidewalk; that Sala

grasped the handle of the pitchfork which Fraguglia still held onto with his left hand; and that Sala dragged him from the sidewalk to the place in front of the truck where he lay when Renati came; that Sala tried to take the pitchfork from him and told him to let go of the fork; that he and Sala were still struggling for the fork when Renati came and took it away from them; that after he came to rest in front of the radiator and before Renati arrived, Sala kicked him and struck him with his fist and with his fingers extended poked or jabbed him in the eye; that he felt the pain at once; and that his eyes up to that time had been all right.

It will be noted that there is not a particle of conflict in the evidence on the following material facts. Sala was a sub-boss entitled to and in duty bound to give directions to those below him. Conceding that during the morning of the controversy he gave many different directions to the plaintiff, Sala was entirely within his rights. When standing on the truck and giving to the plaintiff the last direction the plaintiff became offended. Assuming, as contended by the plaintiff, that at about the same instant Sala reached for the pitchfork, the incident was immaterial. Being second in command he was entitled to reach for and use the pitchfork. The evidence does not disclose any purpose on his part to attack the plaintiff with the pitchfork. As to Sala, all of the incidents occurring when Sala was on the truck show no "unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another". (Pen. Code, sec. 240; *People* v. *Bradbury,* 151 Cal. 675, 676 [91 Pac. 497].) Down to the time that Sala stepped off of the truck it is clear he had committed no assault. Furthermore, when he did step off of the truck such act was in the nature of retiring to the wall. (*People* v. *Hecker,* 109 Cal. 451 [42 Pac. 307, 30 L. R. A. 403].)

We pass then to the consideration of the facts involved in the second division of the controversy. On that particular morning it was the privilege and the duty of the plaintiff to remain in the box of the truck and sort the garbage. In doing so the plaintiff was entitled to use a pitchfork. Outside of the box of the truck he had no duty to perform with a pitchfork. Without disclosing his intentions or purposes, soon after Sala stepped off of the truck the

plaintiff, with the pitchfork in hand, climbed out of the box and down off of the truck and, as stated by him, he was shortly confronting Sala a space of only three feet separating them. At that time the plaintiff had the fork raised and was advancing when first observed by Sala. The latter was not bound to retreat but was entitled to stand and defend himself. From the moment Sala saw Fraguglia the question as to which one of the two made the next advance is not determinative of the rights of the parties. Sala was entitled to act as a reasonable man on the circumstances as they then appeared to him. (*People* v. *Sherman*, 103 Cal. 409 [37 Pac. 388].) It is clear therefore that Sala was entitled to a set of instructions giving a clear-cut statement of the law regarding self-defense.

The defendant complains because the trial court gave, at the request of the plaintiff, instruction XVI. It was as follows:

"The law does not permit any person to voluntarily seek or invite a combat, or to put himself in the way of being assaulted, with the purpose that he may have a pretext to injure his assailant. The right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is set off and induced by the party, by any wilful act of his, or where he voluntarily and of his own free will enters into it. The necessity being of his own creation, will not operate to excuse him.

"Now, if you believe from the evidence in this case that the defendant voluntarily sought or invited the difficulty in which plaintiff was injured, and if you further believe from the evidence that he provoked or commenced or brought it on by any wilful act of his own, or that he voluntarily or of his own free will engaged in it, then and in that case you are not authorized to find for him on the ground of self-defense.

"In determining who commenced or provoked the difficulty, you should take into consideration all the facts and circumstances in evidence before you."

Conceding that the instruction as framed stated correct rules of law, the defendant earnestly contends that said instruction stated facts that do not appear in the record, that is, it was addressed to issues not involved in the action, and it was under the facts of the instant case highly prejudicial to

the defendant. (*People* v. *Roe,* 189 Cal. 548, 558 [209 Pac. 560].) The case cited is directly in point. If the instruction as framed was intended to authorize the jurors to assume the evidence introduced proved or tended to prove that when Sala gave directions to Fraguglia about his work Sala thereby did "voluntarily seek or invite a combat or put himself in the way of being assaulted with the purpose that he may have a pretext to injure his assailant", such was an improper interpretation of the evidence. The same remark holds true if it was intended that the same evidence would authorize the jurors to find that by what Sala said or did while on the truck the difficulty was set off and induced by him by his wilful act, or that he voluntarily or of his own free will entered into an assault. The same remark applies to the sentence that authorized the jury on the same evidence to find that the necessity for the assault was of Sala's creation. If it was not intended to apply to the evidence as to what occurred on the truck it is manifest it did not apply to anything that had been introduced in the evidence. If the instruction was intended to apply to what occurred on the ground it was not pertinent to the acts of Sala.

The defendant contends that instruction XVII, given at the request of the plaintiff, was also a prejudicial error. It was as follows:

"(1) Whenever a person is assaulted by another, he has a right to defend himself, and may use sufficient force to repel the assault in order to protect himself from bodily harm. And when necessary to protect himself from bodily harm at the hands of an assailant, the person assaulted may use sufficient force in repelling the assault, even before the assailant actually commits a battery upon him. But the resistance must be no more than is necessary to accomplish this. If it be greater than is required for such purpose, it becomes in law excessive and without excuse or justification, making the party an aggressor; (2) nor can a person after an assault, follow up his assailant and attack him when in the act of retiring or retreating from the scene of the affray or while helpless upon the ground. Such a course would not be in self defense nor justifiable on any grounds.

"(3) The fact, if you find it to be a fact, that plaintiff was not free from fault, will not prevent you from rendering a verdict in favor of the plaintiff, if you further find that the resulting assault and battery on plaintiff by defendant was accompanied by greater force than was reasonably necessary for the purpose of self defense." (Numerals ours).

■ Nearly all of the instruction comprised in division one was addressed to the right of the defendant to defend himself. It makes no reference to the facts as they appeared to him. On the contrary it holds the defendant bound by the actual facts without regard to appearances. The defendant's objection to that portion of the instruction is well founded. (*People* v. *Thomson,* 145 Cal. 717 [79 Pac. 435].)

The second division of the instruction is addressed to one who returns to the combat. There was no evidence whatever that Sala returned to any combat. That portion of the instruction was not addressed to any issue in the case.

■ The third division of the instruction is addressed to the subject of the use of excessive force. It fails to take into consideration "all the circumstances of the case". In 4 American Jurisprudence, page 152, the author says: "Generally stated, the force that one may use in self-defense is that which reasonably appears necessary, in view of all the circumstances of the case, to prevent the impending injury." The instruction is to the effect if the defendant used some force that was necessary and some that was unnecessary then he was a trespasser *ab initio.* That is a misconception of the law. We quote again from 4 American Jurisprudence, page 153: "One who, in acting in self-defense, uses force in excess of that which he is privileged to use, is liable for so much of the force used as is excessive, and the other person has the normal privilege of defending himself against the use or attempted use of excessive force. In other words, to the extent that excessive violence and unnecessary force is used in repelling an assault, one becomes liable as trespasser and subject to an action for assault and battery. In determining whether the particular means used is or is not excessive, the amount of force exerted, the means or instrument by which it is applied, the manner or method of applying it, and the circumstances under which it is applied are factors to be considered."

From what we have said it is apparent instructions XVI and XVII operated to deprive the defendant Sala of the sole defense which he attempted to prove. It follows that both were prejudicial. In this connection the plaintiff relies on the rule that all of the instructions are to be read together. He does not call to our attention any instruction given which tended to cure the errors complained of. We have not noted any that had such an effect.

Other points presented by the defendant need not, in view of what we have said, be passed upon.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 31, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 28, 1937.