[Crim. No. 2123. First Appellate District, Division Two.—June 3, 1940.]

THE PEOPLE, Respondent, v. CHARLES CAMPANELLA, Appellant.

Daniel F. Hogan and Bernard Nugent for Appellant.

Earl Warren, Attorney-General, and William F. Cleary and Dennis Hession, Deputies Attorney-General, for Respondent.

STURTEVANT, J.—The district attorney filed an information against the defendant charging him with murder. The defendant entered a plea of not guilty. The action was tried before the trial court sitting with a jury. The district attorney conceded that the evidence did not disclose the crime of murder in the first degree, but contended it did disclose murder in the second degree. The jury returned a verdict in accordance with that contention. The defendant made a motion for a new trial which was denied. He has appealed from the judgment and from said order.

The defendant was living at 363 Page Street in San Francisco and occupied a three-room apartment together with Mrs. Hattie Jensen, the estranged wife of the deceased, and her three children by another marriage. He stayed there about two months. Mrs. Jensen was out nearly all of the time and defendant was allowed to stay in the apartment by Mrs. Jensen to look after her two boys, Bobby, aged ten, and another son, aged fourteen. He also helped Mrs. Jensen with the housework. He slept in the kitchen upon a cot. The defendant is fifty years old.

The deceased, James J. Jensen, aged thirty-eight, was the husband of Mrs. Hattie Jensen, but was separated from her and lived elsewhere for about fourteen months.

On the evening of the 14th of November, 1939, at about 5:30 P. M., the deceased went to 363 Page Street and entered the apartment where he found the defendant and Bobby, a son of Mrs. Jensen. The defendant was sitting in an easy

chair in the living room. The deceased took Bobby into the kitchen and asked him what the defendant was doing there. He was told by Bobby that ''he is helping my mother and taking care of us'', whereupon deceased said that before he would let that so and so help his mother he would kill the Dago. The deceased then went into the living room and while the defendant was sitting in the easy chair grabbed defendant by the shirt collar and threw him back in the chair. At about this moment Mrs. Jensen entered the apartment. At that time deceased was leaning over the front of the chair with his hands on both sides of the chair. She said to deceased, ''Here, here. What is wrong, and come out here in the kitchen where I can talk to you.'' The deceased went to the kitchen with Mrs. Jensen and took hold of her coat and shaking her said, ''Before I will let that Dago son of a bitch have you, I am going in there and kill him.'' That statement was made in a loud and angry manner and the defendant testified it could have been heard a half a mile. At once the deceased ran into the living room and up to the defendant who was still sitting in the chair. Deceased struck defendant and knocked his glasses off. He grabbed defendant by the throat. There was a short struggle. The defendant pulled out of his pocket an ordinary pocket knife, opened the blade and stabbed defendant four times while they still struggled. Three of the wounds were trivial but the fourth resulted in a stab in the neck, from which deceased bled to death some minutes later.

The foregoing is a complete summary of the matters stated. Some of the facts were testified to by the defendant, some by Mrs. Jensen, and some by Bobby Williams. No other witness was present. As it becomes necessary other facts developed at the trial will be recited.

From what has been said above it is clear the defendant was entitled to make a claim that he was acting in self-defense. Under a set of facts closely similar it was held that the evidence established that defense as a matter of law. (*People* v. *Sherman,* 103 Cal. 409 [37 Pac. 388].) When instructing the jury on the law of justifiable homicide, the trial court read all of section 197 of the Penal Code including the duty, in certain instances, to ''decline any further struggle''. But it refused defendant's request to give an instruction which was as follows: ''Where one, without fault, is placed

under circumstances sufficient to excite the fears of a reasonable man that another designs to commit a felony, or some great bodily injury upon him, and to afford grounds for reasonable belief that there is imminent danger of the accomplishment of this design, he may, acting under these fears alone, slay his assailant and be justified by the appearances. And, as where the attack is sudden and the danger imminent, he may increase his peril by retreat; so situated, he may stand his ground, that becoming his wall, and slay his aggressor, even if it be proved that he might more easily have gained his safety by flight." (*People* v. *Hecker*, 109 Cal. 451, 462 [42 Pac. 307, 30 L. R. A. 403].) It is not claimed that the instruction incorrectly stated the law, but it is claimed it was covered by other instructions. We have examined the record and we find no other instruction addressed to the same subject. The instruction was of particular importance. The district attorney in the examination of witnesses adduced the evidence and summing up he earnestly argued that the defendant could have left the apartment when the deceased and Bobby went to the kitchen, and again that he could have left the apartment when the deceased and Mrs. Jensen went to the kitchen, and that the defendant could have left the apartment by going down the fire escape. It is patent therefore that the defendant was prejudiced by the failure of the court to give the foregoing instructions.

Acting upon the request of the prosecution, the trial court instructed the jury as follows: "You are instructed that self-defense is not available as a plea to a defendant who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance, or thought (*sic*), to create a real or apparent necessity for killing." It is earnestly claimed by the defendant that the instruction was highly prejudicial to him and that it was not based on any evidence contained in the record. We think that contention must be sustained. Mrs. Jensen testified the defendant had "met" the deceased. She did not give any further information on that subject, nor did any other witness. The defendant testified positively that he did not know who the deceased was when he came into the apartment. There was no evidence whatever pertinent to said instruction excepting what has been set forth above, and that, we submit, is wholly silent. Under such circumstances it has been held it was

error to give the instruction. (*People* v. *Orosco*, 73 Cal. App. 580, 600 [239 Pac. 82].) In that case the court said: ''It is urged upon us that the trial court erred in instructing the jury 'that self-defense is not available as a plea to a defendant who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance or fault to create a real or apparent necessity for killing'. The point is well taken. While the instruction was a correct statement of an abstract proposition of law, it was improperly given in the present instance for the reason that there was not in the record the slightest evidence that appellant sought a quarrel with Rios during the series of events leading up to the latter's death. Furthermore the instruction as given was not sound law. The word ''thought'' was perhaps meant to be ''fault''. (*People* v. *Orosco, supra.*)

 During the trial the prosecution introduced much evidence to the effect that the defendant was contented with his lodgings and unwilling to move. Evidence was also introduced that the deceased was not armed. But no witness testified that the body of the deceased was searched and no weapon was found. Nor was there any evidence that the defendant knew he was unarmed. When the deceased returned after talking to Mrs. Jensen, the defendant testified, the deceased with one hand grabbed the defendant by the throat, and with the other hand he struck the defendant's leg. On which leg and at what place the deceased struck was not developed. After the fight was over evidence was introduced showing the defendant had been stabbed in the leg, that a hole was cut in his trousers, and that the position of the hole in the trousers and the stab in the leg coincided. The defendant did not testify the deceased stabbed him in the leg, nor that the stab was in the same place where deceased hit him. Officer Ahern testified that at the hospital in the evening after the homicide the defendant stated to him the deceased may have stabbed him in the leg or he may have stabbed himself during the fight. After the fight was over the defendant immediately went into the bathroom, washed his hands and face, and changed his clothes. He also washed his knife and put it and his soiled clothes in a grip which he left in the bathroom and then he started to go to the emergency hospital. At no time did he deny he stabbed the deceased. He admitted he did and that he had used the above-mentioned knife in doing

so. Having called attention to the foregoing testimony the respondent asserts, "It would appear that appellant killed, not in self-defense, but without sufficient provocation and with an abandoned and malignant heart the man who was urging and insisting that he be ejected from the comfortable room and board afforded him by virtue of his relations with Mrs. Jensen, the deceased's wife. Killing is justifiable only in defense of life or limb, and the jury has determined that the appellant was not defending his life in this case." That contention is two-fold. The claim that the facts and circumstances introduced in evidence showed the defendant acted "with an abandoned and malignant heart" may not be sustained. (*People* v. *Elmore,* 167 Cal. 205 [138 Pac. 989]; *People* v. *Kelley,* 208 Cal. 387, 393 [281 Pac. 609]; *People* v. *Castro,* 37 Cal. App. (2d) 311 [99 Pac. (2d) 374].) The rest of the contention, the claim that self-defense was not in good faith tendered and maintained as a defense, rests on no facts introduced in evidence. Throughout the trial the prosecution sought to prove such theory. But the only evidence introduced regarding the intent of the defendant was his testimony given on cross-examination. That examination was long and searching, but the defendant consistently claimed he acted in defense of Mrs. Jensen and her boys and in fear of his own life and great bodily injury. In the story as told by him there was no conflict. It follows the claim of the defendant that the offense, if any, was manslaughter, and not murder in the second degree, must be sustained.

In the case of *People* v. *Kelley, supra,* the Supreme Court modified the judgment by changing the charge from murder to manslaughter. But in that case the defendant had not presented the issue that he had acted in self-defense. In the present case that is the sole defense relied on by the defendant. As we have shown above, the refusal to give an important instruction on that subject prevented him from fully presenting that defense. He should be allowed to do so.

The judgment and order appealed from are reversed and a new trial is ordered.

Nourse, P. J., and Spence, J., concurred.