Garner *v.* Scott.

5-841                                          286 S. W. 2d 481

Opinion delivered February 6, 1956.

*Marshall N. Carlisle* and *Tom Gentry,* for appellant.

*R. Julian Glover,* for appellee.

Paul Ward, Associate Justice. Appellants, Thomas Garner and Gilbert Thomas, brought this action in the circuit court, asking for damages against appellees, based on the alleged negligence of Cecil Scott in driving a concrete mixer, belonging to C. J. Horner & Co., into the automobile in which they were riding. From a jury verdict in favor of appellees, comes this appeal.

For a reversal appellants make three assignments of error, viz.: (a) Inadmissible evidence; (b) Refusal to allow examination of certain witnesses, and; (c) Giving Instruction No. 7. We find it necessary to reverse the cause on the last assignment, and will therefore mention the first two only briefly.

In order to evaluate Instruction No. 7, it is necessary to set out a summary of the issues and the testimony.

The complaint alleges: Garner and Thomas, in a Chevrolet sedan, owned and driven by Garner, were driv-

ing north on Third Street in the City of Hot Springs when Scott "negligently, willfully, wantonly, and with malicious intent drove" the concrete mixer, suddenly and without warning, into the left side of the automobile, forcing it into the curb, and damaging it to the extent of $350 and injuring Gilbert Thomas in the amount of $2,500. The prayer was for the above amounts and for punitive damages for each of them in the amount of $5,000.

In addition to a general denial, appellees answered: (a) Appellants were guilty of contributory negligence; (b) Appellants were in pursuit of the driver [Scott] of the cement mixer with intent to do him bodily harm and to do physical damage to the cement mixer, and; (c) Scott was compelled by reason of the negligence of appellants either to collide with an approaching vehicle or to collide with the Chevrolet car.

By far the major portion of the testimony in this case concerned a state of ill feeling that was supposed to exist between appellants and the appellees as the result of a strike at the place of business of appellee C. J. Horner & Co. The first contention of appellants is that much of this testimony was inadmissible. Without at this time passing on the merit of that contention it suffices to say that much of it was first introduced by appellants. Appellants' second contention is that they should have been afforded an opportunity to examine one of appellees' witnesses to ascertain the source of his contemplated testimony. Regardless of whether appellants were denied any rights in all probability this question will not arise again.

This case seems to have been tried largely upon a theory somewhat novel to any reported decisions of this court. Appellees undertook to show that appellants were pursuing them with intent to do harm to Scott and damage to the cement mixer, and that in order to protect himself and the cement mixer Scott drove the mixer into the automobile in which appellants were riding. There is not a great deal of material conflict in the testimony

introduced by both sides relative to what happened shortly before the collision. Earlier in the day Scott had driven the cement mixer, which loaded weighed approximately 37,000 pounds, to different jobs in Hot Springs to deliver concrete. On these occasions he had noticed appellants following him in the automobile, and had noticed that they would park their automobile nearby while he was unloading. Scott's testimony was that they were apparently trying to force him to stop the truck in which he was riding and he thought they were bent on doing him or the truck harm. It was developed that appellants belonged to a union and that perhaps they were in sympathy with the strikers, but that Scott had refused to walk out with the other strikers. Just before the incident complained of Scott stated that after he entered Third Street going north appellants drove in front of him and he thought they were trying to block his progress, and that he drove at a somewhat excessive rate of speed in order to avoid an altercation. Scott testified that as long as he was in the cement mixer he was not afraid. Scott testified that immediately before the collision he drove up behind appellants' automobile and that as he was about to pass there was another car coming from the opposite direction and that he was forced either to drop back in the line of traffic behind appellants' automobile or drive his truck into the automobile. Scott does not deny that he did strike the back end of appellants' automobile and caused damage to it and injury to Gilbert Thomas.

There is no complaint made about the instructions relative to contributory negligence or any other feature of the case except the one instruction referred to above.

Under the above state of facts the trial court gave, over the general and specific objections of appellants, Instruction No. 7 which reads as follows:

"If you find from a preponderance of the evidence in this case, that plaintiffs were on a joint mission to do bodily harm to Cecil Scott or to damage the truck that he was driving, by forcing him to the curb or by forcing

him to stop so that bodily injury might be inflicted upon him, and that the defendant, Cecil Scott, honestly and without fault on his part, believed that plaintiffs were about to inflict upon him a bodily injury or damage the truck, or that it became necessary, and it appeared to the defendant Scott at the time, acting as a reasonable person, that it was necessary to defend himself, *and he did so by driving his truck into the car occupied by plaintiffs in order to prevent bodily harm to himself or damage to the truck,* then you are instructed that he was justified in doing so, and you will find the issues in favor of the defendants.'' (Emphasis supplied.)

We have given careful consideration to the wording of the above instruction and have concluded that the court should not have included that portion which is italicized above but should have inserted other suitable language similar to that hereafter suggested.

We find nothing wrong with the first portion of the instruction down to the part italicized, but as it now stands it amounts to the court telling the jury that Scott had a right to do exactly what he did. In other words Instruction No. 7 practically made Scott the sole judge of what to do to protect himself and did not, as it should have, require him to use only such means as were necessary under the circumstances to prevent harm, or, acting as a reasonably prudent person, to have tried to avoid harm to himself in some other way. For instance the jury might have thought that he could have pulled in behind appellants' automobile as the approaching vehicle passed and then continue on his way to a place of safety, particularly since he had stated that he was not afraid as long as he was in the cement mixer.

As stated before this case presents a somewhat novel situation but we find expressions in other decisions that confirm our conclusion that Instruction No. 7 was prejudicial.

The question of how much force is permissible in resisting an unlawful arrest was considered in *People* v.

*Cherry,* 307 N. Y. 308, 125 N. Y. S. 2d 654, 126 N. Y. S. 2d 603, 121 N. E. 2d 238, and the court at page 240 had this to say:

"If force is necessary to prevent an unlawful arrest, then force may be employed, the one limitation on its exercise being that the victim may not pursue his counterattack merely for the sake of revenge or the infliction of needless injury."

In *Fraguglia* v. *Sala,* 17 Cal. App. 2d 738, 62 Pac. 2d 783, it was said: "Force that one may use in self defense is that which reasonably appears necessary in view of all circumstances of the case, to prevent impending damages." At page 786 the court said the jury could find for the plaintiff even though the plaintiff was at fault "if you further find that the resulting assault and battery on the plaintiff by defendant was accompanied by greater force than was reasonably necessary for the purpose of self defense." It cites with approval 4 Am. Jur. 152 which says: "Generally stated the force that one may use in self defense is that which reasonably appears necessary in view of all of the circumstances of the case to prevent the impending injury."

*Randall* v. *Ridgely,* (La. App.) 185 So. 632. This was a civil action for damages in an assault and battery case. At page 633 the court said: "Under no theory can it be said that defendant was warranted in using any greater force than was necessary in ejecting plaintiff from the premises." On the same page it quotes with approval "A person defending himself from an attack becomes liable as an aggressor where the force employed is in excess of that which the law will tolerate in a given case for defensive purposes, and for the use of such excessive force he is liable both civilly and criminally."

*Downey* v. *Duff,* 106 Ark. 4, 152 S. W. 1010, this is a civil case in assault and battery. At top of page 7 the court approved the following instructions:

" 'If you find from the evidence that the plaintiff, Duff, made an assault upon the defendant Downey, with

a dangerous weapon and that Downey in good faith believed that it was necessary for him to strike Duff in order to prevent Duff from striking him with the weapon (to avoid the infliction of bodily harm upon himself) and that Downey used no more force than was necessary (as the situation appeared to the defendant under the circumstances) then you should find for the defendant.' "

" 'You are instructed that an assault is an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another, and, if you find from a preponderance of the evidence that at the time defendant struck plaintiff, plaintiff was committing an assault upon him, the defendant was justified in using such force as appeared to him reasonably necessary, acting as a prudent person would under similar circumstances, to resist the assault of plaintiff, and to prevent any renewal of such assault, if such renewal could be reasonably apprehended.' "

Restatement of the Law, under Torts, § 70, at page 147, in this same connection it is said:

"The actor is not privileged to use any means of self defense which is intended or likely to cause a bodily harm or confinement in excess of that which the actor correctly or reasonably believes to be necessary for his protection."

At the bottom of page 148 it is stated that: "The actor must believe that the means which he applies are necessary to prevent the apprehended harm. . . . Not only must the actor so believe, but . . . his belief must be reasonable, that is, the circumstances which are known or should be known to the actor must be such that a reasonable man would so believe." And again at page 149: "The actor is not privileged to apply a particular force if he knows or should know that the apprehended harm can be prevented by the application of a force less in kind or degree . . . ."

The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.