Filed 10/11/23  P. v. Gonzalez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C095230 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE20210000102) |
| v. | |
| ROBERT GONZALEZ, | |
| Defendant and Appellant. | |

A jury found defendant Robert Gonzalez guilty of murder (count 1) and possession of a firearm by a person who has been convicted of a felony (count 2).  The jury found that the murder was in the second degree and defendant personally and intentionally discharged a firearm that caused death in the commission of this offense. (Pen. Code, § 12022.53, subd. (d).)[1]

---

[1] Undesignated statutory references are to the Penal Code.

The trial court sentenced defendant to 15 years to life in prison for count 1 plus a consecutive term of 25 years to life for the firearm enhancement. The court imposed and stayed a term of 3 years for count 2.

On appeal, defendant argues the trial court's decision to instruct the jury with CALCRIM No. 3472 on contrived self-defense was not supported by substantial evidence. Defendant further contends the trial court erred in not excluding under Evidence Code section 352 evidence of: (1) the victim's statements describing defendant's prior conduct toward the victim, and (2) defendant's use of force on his girlfriend in taking her vehicle before the shooting. Defendant also argues he is entitled to remand for resentencing under *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), because the trial court misunderstood its discretion to strike the charged enhancement and impose a lesser, uncharged enhancement in its place.

We reject defendant's claims of instructional and evidentiary error but agree remand is appropriate to permit the trial court to exercise its sentencing discretion. We shall therefore vacate the sentence and remand this case for the limited purpose of allowing the trial court to exercise its discretion as to whether to strike the section 12022.53, subdivision (d) enhancement and instead impose a lesser, uncharged enhancement. In all other respects, the judgment is affirmed.

## I. BACKGROUND

After 1 a.m. on December 23, 2019, A.P. went outside a bar with the victim to vape. A.P. testified defendant came outside, stood in front of the victim, and asked A.P. for a cigarette. After A.P. said he did not have one, defendant asked the victim. A.P. testified the victim said he had one, pulled it out, and then dropped it on the ground. Previously, A.P. told the police defendant dropped the cigarette. Either way, after the cigarette fell to the ground, defendant said, " 'Oh, you're gonna make me bend over like a bitch?' " According to A.P., the next thing that happened was the victim punched defendant in the head. Then, "[t]hey just started fighting and backing up." A.P.

2

described it as "two people engaging together." Seconds later, A.P. heard approximately four gunshots and ran inside the bar.

Surveillance video of the area outside the bar showed defendant bend down to pick something up as A.P. had described. The victim struck defendant, whose back was to the parking lot, and the struggle was not visible for a few seconds as they moved toward the parking lot. Then, defendant's elbow extended up, and a puff of smoke appeared near his hand. Defendant fell to the ground and rolled over. The victim swung at defendant, and then fell to the ground and stopped moving. Defendant walked toward a parked white SUV. The entire video is 24 seconds long.

No weapons were found on the victim. He died of a gunshot wound to the head.

A bar customer testified to seeing the white SUV drive away. Defendant's girlfriend's white SUV was found a few weeks later in El Paso, Texas. She had reported it stolen in the morning after the shooting.

A year later, defendant voluntarily made contact with a border patrol agent at the Calexico point of entry.

## II. DISCUSSION

*A.     CALCRIM No. 3472*

The trial court instructed the jury with CALCRIM No. 3472 that "[a] person does not have the right to self-defense if he provokes a fight or quarrel with the intent to create an excuse to use force." It is error to give an instruction that has no application to the facts of the case; there must be substantial evidence to support the instruction. (*People v. Cross* (2008) 45 Cal.4th 58, 67; *People v. Campbell* (1994) 25 Cal.App.4th 402, 408.) Defendant argues substantial evidence did not justify giving this instruction because he did not initiate the fight with his own assault or the commission of a felony, and only said words to the victim before the fight began.

CALCRIM No. 3472 itself does not include the limitations suggested by defendant: It denies the right of self-defense if the defendant "*provokes* a fight or

3

quarrel" to create an excuse for using force. (Italics added.) This is a correct statement of the law and defendant does not argue otherwise. What is required is only that defendant sought, provoked, or invited the quarrel with the intent of creating a pretext for attacking the assailant. (*People v. Holt* (1944) 25 Cal.2d 59, 66; *People v. Hinshaw* (1924) 194 Cal. 1, 26; *People v. Hecker* (1895) 109 Cal. 451, 462; *Fraguglia v. Sala* (1936) 17 Cal.App.2d 738, 743.) The fact defendant was not the first person to make physical contact does not preclude the applicability of this rule. (See *People v. Eulian* (2016) 247 Cal.App.4th 1324, 1334 [defendant did not have the right to use physical force to settle a physical confrontation he arguably created with aggressive conduct of yelling and gesturing regardless of whether the victim kicked defendant and his mother in response to that conduct].)

None of the authorities defendant cites demonstrate otherwise. Rather, they explain the self-defense doctrine " 'may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified.' " (*People v. Enraca* (2012) 53 Cal.4th 735, 761; accord *In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1.) These authorities do not hold these are the only circumstances in which a defendant loses the right to self-defense or otherwise overrule the existing authority that authorizes CALCRIM No. 3472. (See *People v. Holt, supra*, 25 Cal.2d at pp. 65-66 [" 'a cause which originates in the fault of the person himself[,] in a quarrel which he has provoked, *or* in a danger which he has voluntarily brought upon himself, by his own misconduct, can not be considered reasonable or sufficient in law to support a well-grounded apprehension of imminent danger to his person,' " italics added].) In *In re Christian S.*, the statement on which defendant relies was made in a footnote and not elaborated on beyond explaining that a fleeing felon who shoots a pursuing police officer to escape a murder conviction cannot invoke self-defense. (*In re Christian S., supra*, at p. 773, fn. 1.) In *Enraca*, the statement similarly reflects the

4

circumstances alleged in that case. (*Enraca, supra*, at p. 762.) The initiation of a physical attack or the commission of a felony are not prerequisites for giving CALCRIM No. 3472. As such, we conclude substantial evidence supported the instruction.

In determining whether substantial evidence supports a jury instruction, "we view the evidence most favorably to the judgment presuming the existence of every fact that reasonably may be deduced from the record in support of the judgment." (*People v. Jantz* (2006) 137 Cal.App.4th 1283, 1290.) Defendant relies on the fact A.P. agreed with defense counsel's suggestion that the statement " 'Oh, you're gonna make me bend over like a bitch?' " was made "in a jokey tone of voice," and defendant "did not sound angry when he said it," but the statement could still have been designed to antagonize the victim into action. Defendant approached the victim while carrying a loaded firearm he was not allowed to possess. It was only seconds into their fight when defendant fired multiple shots, killing his unarmed victim, and then calmly walked to a vehicle that was parked nearby before ultimately fleeing for more than a year. Taken as a whole, the evidence supports the reasonable inference that defendant provoked a confrontation with the victim to give himself the apparent grounds to kill the victim and claim self-defense. We therefore reject defendant's assertion of instructional error.

B.      *Victim's Statements Regarding Defendant's Prior Conduct Toward Him*

Defendant contends the trial court erred in admitting the victim's statements describing his prior conduct toward the victim because any probative value was substantially outweighed by the prejudicial potential of the evidence. We are unpersuaded.

1.      *Trial Court Proceedings*

During trial, the prosecution sought to admit statements the victim made to A.P. and to his sister. With respect to A.P., the prosecution offered testimony that the victim told him defendant was rude and disrespectful to him at a different bar earlier that night about the victim's recently-deceased son, and the victim wanted to fight defendant

5

because of it.  With respect to the victim's sister, the prosecution offered testimony that the victim told her he did not want to get into a fight with a man who had been "talking shit" to him, picking on him, giving him looks, and rubbing shoulders with him, but he would fight him if his sister did not come get him.

The trial court admitted the statements under Evidence Code section 1250 as circumstantial evidence of the victim's state of mind and conduct in conformity with that state of mind and not the truth of the matter asserted.  The court determined the statements were "relevant to the state of mind of the decedent, because it relates to the issue of whether or not the defendant would be engaged in self-defense."  The court also concluded the statements were not testimonial and not unduly prejudicial under Evidence Code section 352.

The court gave a limiting instruction before the relevant portions of testimony from both the victim's sister and A.P.  Specifically, the court instructed the jury: "Evidence of the statements made by [the victim] are offered to prove by circumstantial evidence [his] state of mind and conduct in conformity with that state of mind only and are not being offered to prove the truth of the matter asserted regarding the defendant's conduct.  It is up to the jury to decide whether the state of mind of [the victim] is relevant in this case."  The trial court also instructed the jury with CALCRIM No. 303 that, "During the trial, certain evidence was admitted for a limited purpose.  You may consider that evidence only for that purpose and for no other."

   2.    *Evidence Code Sections 1250 and 352*

"Evidence Code section 1250, which authorizes the admission of out-of-court statements to prove the declarant's state of mind, permits the admission of such evidence only if the declarant's state of mind 'is itself an issue in the action' or if the evidence 'is offered to prove or explain acts or conduct of the declarant.'  (Evid. Code, § 1250, subd. (a)(1)-(2).)  'Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." ' "

6

(*People v. Riccardi* (2012) 54 Cal.4th 758, 814-815, abrogated on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

"A prerequisite to this exception is that the declarant's mental state or conduct be placed in issue." (*People v. Kovacich* (2011) 201 Cal.App.4th 863, 884.)

Defendant argues the trial court erred in admitting the evidence because its probative value was substantially outweighed by the danger of undue prejudice. (Evid. Code, § 352.) In light of defendant's alternative assertion that his trial counsel rendered ineffective assistance in not specifically raising an Evidence Code section 352 objection, we address the trial court's ruling on the merits rather than deciding if the issue was forfeited.

"The abuse of discretion standard of review applies to any ruling by a trial court on the admissibility of evidence. [Citation.] This standard is particularly appropriate when, as here, the trial court's determination of admissibility involved questions of relevance, the state-of-mind exception to the hearsay rule, and undue prejudice. [Citation.] Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1113, overruled on another point in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

Defendant argues evidence regarding the victim's state of mind had minimal relevance because it was indisputable the victim was the initial aggressor, and the relevant question was whether defendant acted reasonably under the circumstances. In other words, he contends the conduct of the victim was not in dispute. " '[A] fact . . . generally becomes "disputed" when it is raised by a plea of not guilty or a denial of an allegation [and] remains "disputed" until it is resolved.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 38.) Thus, it is not true that whether the victim was the initial aggressor was not in dispute merely because the evidence appeared to demonstrate he was; indeed, in

7

arguing for the admissibility of this evidence, the prosecution indicated it was hoping to show otherwise. Regardless, as defendant acknowledges, one of the key issues in the case was whether defendant reasonably believed he was in imminent danger of suffering great bodily injury and that the immediate use of deadly force was necessary to defend against that danger. Defendant cites authority explaining "[r]easonableness is judged by how the situation appeared to the *defendant*, not the victim" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1068), but that does not mean the victim's conduct is irrelevant to how the situation appeared to the defendant. Indeed, this same authority explains that "[t]he victim's behavior is also highly relevant." (*Ibid*.) Defendant and the victim were not always visible in the security footage. To the extent they were visible, the amount of force the victim used was unclear. The statements were relevant because they had a tendency in reason to show the nature of the confrontation. The prosecution used the evidence to argue the victim did not cause the defendant to be in fear of death or imminent bodily injury on a reasonable basis because the victim intended to and did only engage in a non-deadly fight without weapons. We disagree with defendant's assertion that the evidence had minimal relevance.

" ' "Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt." ' [Citation.] Our courts have acknowledged that '[a] limiting instruction can ameliorate section 352 prejudice by eliminating the danger the jury could consider the evidence for an improper purpose.' " (*People v. Gonzalez* (2021) 12 Cal.5th 367, 409.) Defendant notes nonhearsay statements regarding the defendant's conduct admitted to prove circumstantially the victim's state of mind or conduct present "an elevated danger of prejudice if the jury is unable to distinguish between the truth of the matters asserted and the inferences concerning the declarant's state of mind." (*People v. Riccardi, supra*, 54 Cal.4th at p. 823.) He argues the jury could not have effectively distinguished between the truth of the matters asserted

8

and the inferences concerning the victim's state of mind because his state of mind "would not make any sense unless appellant had engaged in the conduct described." But here the court gave a limiting instruction to mitigate the danger of prejudice (*id.* at p. 824) and we presume the jury followed this instruction (*People v. Merriman* (2014) 60 Cal.4th 1, 71). We conclude the trial court did not abuse its discretion in determining there was "minimal prejudicial effect to the defense" with respect to the statements regarding defendant's behavior toward the victim. As the court explained, these statements were evidence of the victim's "anxiety concerning the defendant" and indicated defendant engaged in "relatively minor, annoying rudeness" as opposed to any "pushing, shoving, or fighting." Defendant argues the statement that the victim's son had died two months earlier "carried a highly prejudicial potential." We disagree. This is not evidence that would tend to evoke an emotional bias against defendant. There was no suggestion defendant had anything to do with the victim's son's death. We cannot infer that merely because the victim had suffered an earlier, unrelated tragedy, the jury would be more likely to convict defendant of the charged crime. Indeed, this evidence could support the suggestion that the victim initiated the fight after overreacting to comments by defendant that were not actually intended to provoke a fight. The trial court did not abuse its discretion in admitting the victim's statements.

C.      *Evidence of Defendant's Use of Force in Taking His Girlfriend's Vehicle*

Defendant argues the trial court should have excluded under Evidence Code section 352 evidence that he used force on his girlfriend in taking her SUV five and a half hours before the shooting. We disagree.

1.      *Trial Court Proceedings*

Prior to trial, defendant moved in limine to exclude this evidence under Evidence Code sections 1101, subdivision (a), and 352. Defendant argued there was a risk the jury would use the evidence as impermissible character evidence. Defense counsel renewed the objection at trial.

9

The trial court ruled the evidence was relevant and admissible to show defendant possessed the vehicle, how he came into possession of the vehicle, and to attack his girlfriend's credibility. The court concluded the prejudicial effect did not substantially outweigh the probative value.

Defendant's girlfriend testified that she let him take her SUV at about 5:30 p.m. on December 22. They had a verbal disagreement, he told her to get out of the vehicle, and she got out with her daughter. She testified she reported the SUV stolen the next day because defendant did not bring it back. She had told the police defendant had taken the SUV at 8:30 p.m. Additionally, she testified she lied when she told the police that defendant put his hands on her. She said that, because she was mad at defendant, she told the police he grabbed her hair and pushed her down. Defendant's girlfriend further testified the police offered her a protective order, and she accepted it.

During the girlfriend's testimony, the court gave the following admonishment to the jury:

"I want to admonish you as to certain statements that were made by the witness, . . . [a]nd I'm going to admonish you that they cannot be used to show bad character by the defendant. In other words, that it's more likely than not that he committed the murder because of the—any alleged acts of violence. It is admissible primarily as to—to show credibility of the witness." As we previously stated, the jury was also instructed that "[d]uring the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

2.    *Evidence Code Sections 1101 and 352*

Defendant argues the probative value of the evidence was at most minimal, and its prejudicial potential was great.

Evidence Code section 1101, subdivision (a) provides, unless an exception applies, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her

10

conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."  Additionally, Evidence Code section 1101, subdivision (c) provides: "Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

The People argue the evidence was also relevant to defendant's state of mind when he shot the victim.  This argument invokes subdivision (b) of Evidence Code section 1101, which clarifies that subdivision (a) " 'does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition,' such as identity, common plan, or intent. [Citation.]  Evidence of uncharged crimes is admissible to prove identity, common plan, and intent 'only if the charged and uncharged crimes are sufficiently similar to support a rational inference' on these issues." (*People v. Edwards* (2013) 57 Cal.4th 658, 711 (*Edwards*).)  "The least degree of similarity is required to prove intent or mental state." (*People v. Thomas* (2011) 52 Cal.4th 336, 355.)  "Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially.  [Citations.] Consequently, a defendant's actions leading up to the crime may be relevant to prove his or her mental state and intentions at the time of the crime." (*Ibid.*)  " ' " 'We have long recognized "that if a person acts similarly in similar situations, he probably harbors the same intent in each instance" [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent.  The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution.' " ' " (*Ibid.*)  The trial court, however, did not admit the evidence to show intent or mental state.  It gave a limiting instruction to the jury indicating it could not use the evidence to show defendant's character but to evaluate his girlfriend's credibility.

11

"We review the trial court's determination for abuse of discretion[] and view the evidence in the light most favorable to the trial court's ruling." (*Edwards, supra*, 57 Cal.4th at p. 711.) The evidence was relevant for a nonpropensity purpose and therefore was not prohibited under Evidence Code section 1101, subdivision (a). As the People note, the defendant's actions in obtaining his girlfriend's SUV were not remote or unrelated to the underlying facts of the crime. The evidence at trial showed defendant left the murder scene in the SUV and his girlfriend had to retrieve it near the Mexican border. The SUV contained circumstantial evidence of defendant's guilt. His girlfriend testified that her own border crossings while defendant was missing were to take her grandmother to the airport. She denied these trips were to visit defendant. During closing argument, the prosecution used the discrepancies in the girlfriend's testimony, such as how long she waited to report her SUV stolen, to argue that she had aided defendant's flight from what was a premeditated murder. The evidence that defendant's girlfriend had either lied to the police or later lied to protect defendant about the circumstances in which he took the vehicle had a tendency in reason to speak to her credibility, which was an issue for the jury. With respect to the potential for prejudice under Evidence Code section 352, the court explained it did not find the evidence very prejudicial in part because the girlfriend was not injured and "[i]t's one act where he pushes her down." Further, the evidence did not take long to present, and was not remote in time from the homicide. The court also gave a limiting instruction to dispel any potential prejudice. We conclude the trial court did not abuse its discretion in admitting evidence that defendant's girlfriend initially told police he used force on her in taking her car a few hours before he killed the victim.

D.      *Section 12022.53 Firearm Enhancement*

At sentencing, which occurred in November 2021, the court declined to strike the section 12022.53, subdivision (d) firearm enhancement. On appeal, defendant argues the case must be remanded because the trial court was unaware of its discretion to strike this

12

enhancement and impose a different, uncharged enhancement within the same section (§ 12022.53, subds. (b) or (c)) under *Tirado, supra*, 12 Cal.5th 688.

Although defendant did not ask the trial court to impose a lesser firearm enhancement, we disagree with the People's assertion that the claim is forfeited. At the time of sentencing, it was unclear whether the trial court could have imposed a lesser enhancement. Two months after defendant's sentencing, our Supreme Court resolved a split of authority regarding this issue and concluded trial courts have this authority. (*Tirado, supra*, 12 Cal.5th at pp. 692, 696.) Under these circumstances, even assuming the issue was forfeited, we exercise our discretion to address the merits. (*People v. Smith* (2003) 31 Cal.4th 1207, 1215; *GreenLake Capital, LLC v. Bingo Investments, LLC* (2010) 185 Cal.App.4th 731, 739, fn. 6.)

" ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." [Citation.] In such circumstances, . . . the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Flores* (2020) 9 Cal.5th 371, 431-432.)

The People assert the trial court made such a clear indication when it made the following comments: "The next issue is the 12022.53 enhancement. The court has authority to strike that. However, here, there are several factors. Number one, he was on probation at that time for a felony assault by means of force likely to cause great bodily injury. Also, the victim was particularly vulnerable. The victim was unarmed. [Defense counsel] brings up the fact that the victim did start the incident. And the victim threw the first blow. There's not much arguing about that. However, it was non-deadly force. It was with a fist. And the firearm—if it weren't for a firearm, the victim would be alive

13

today. But I don't know if that's unduly tautological or not, but this wouldn't have happened without a gun. And the victim had no weapon of any sort. So I am going to deny the motion to strike the 12022.53 allegation." This statement merely explained the court's reasoning for not striking the enhancement in its entirety. It does not "clearly indicate" the trial court would have imposed the same section 12022.53, subdivision (d) enhancement even if the court had been aware it could impose a lesser one. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425, 427.) Thus, we conclude it is appropriate to remand this matter to allow the trial court to exercise its sentencing discretion in light of *Tirado, supra*, 12 Cal.5th 688. We express no opinion regarding how the court should exercise that discretion on remand.

### III. DISPOSITION

Defendant's sentence is vacated, and the matter is remanded for resentencing and the trial court's exercise of its discretion in accordance with this opinion.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

WISEMAN, J.[*]

_____

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14