[No. E013067. Fourth Dist., Div. Two. July 7, 1995.]

BUILDING PROFIT CORPORATION, Plaintiff and Appellant, v.
MORTGAGE AND REALTY TRUST, Defendant and Respondent.

684

■■■■■■■■■

## COUNSEL

Cox, Castle & Nicholson, David A. Leipziger, Randy P. Orlik and Herbert Jay Klein for Plaintiff and Appellant.

Frandzel & Share, David K. Golding, Lesley Anne Hawes and Craig A. Welin for Defendant and Respondent.

## OPINION

McDANIEL, J.*—In this case, we are called upon to interpret a construction lender's obligation to an "original contractor" under the "stop notice" provisions of former Civil Code sections 3159 and 3162.1[1] The precise issue before us is whether the second, italicized sentence in each of the statutes

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of Judicial Council.

[1]All statutory references are to the Civil Code. Sections 3159 and 3162, *post*, were amended in September 1994, over two years after the service of the stop notice in the case here. " 'Original contractor' means any contractor who has a direct contractual relationship with the owner." (§ 3095.)

At all times relevant here, former section 3159 (hereinafter referred to as section 3159) provided in pertinent part that a contractor "may, prior to the expiration of the period within which his or her claim of lien must be recorded . . . give to a construction lender a stop notice or a bonded stop notice. *If a payment bond has previously been recorded in the office of the county recorder where the site is located in accordance with Section 3235 [recording of payment bond of original contractor] or in accordance with Section 3162, then the construction lender shall withhold funds pursuant to a bonded stop notice filed by an original contractor and may, at its option, withhold funds pursuant to a stop notice or a bonded stop notice by anyone other than an original contractor. . . .*" (Italics added.)

At all times relevant here, former section 3162 (hereinafter referred to as section 3162) provided: "Upon receipt of a stop notice pursuant to Section 3159, the construction lender may, and upon receipt of a bonded stop notice the construction lender shall, withhold from the borrower or other person to whom it or the owner may be obligated to make payments or advancement out of the construction fund, sufficient money to answer the claim and any claim of lien that may be recorded therefor. *If a payment bond has previously been recorded in the office of the county recorder where the site is located in accordance with Section 3235, then the construction lender shall withhold funds pursuant to a bonded stop notice filed by an original*

conditions a construction lender's obligation to withhold funds after service of a bonded stop notice by an original contractor on the recording of a payment bond by the contractor. Stated differently, and in the language of the parties: is the recording of a payment bond by an original contractor a condition precedent to the contractor's right to recover on a bonded stop notice given to a construction lender?[2]

In an action by Building Profit Corporation, an "original contractor" (plaintiff), against Mortgage and Realty Trust, a construction lender (defendant), to recover on a bonded stop notice, plaintiff has appealed from a judgment on the pleadings entered in favor of defendant. The trial court granted defendant's motion for judgment on the pleadings on the ground that plaintiff did not and could not allege that it had recorded a payment bond, and, under sections 3159 and 3162, that such recordation was a condition precedent to plaintiff's right to recover on its bonded stop notice. Plaintiff contends that the trial court's interpretation of sections 3159 and 3162 was incorrect. For the reasons stated below, we agree with plaintiff. We shall reverse the judgment accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an unverified complaint to foreclose a mechanic's lien and to enforce payment of the claim stated in a bonded stop notice. The named defendants were Borneo International Furniture, Inc. (Borneo), the owner of the property subject to the lien, defendant, and over 20 other "lien claimants." Plaintiff alleged that: (1) it entered into a written contract with Borneo whereby it agreed to furnish Borneo with labor, materials and supplies and to oversee the construction of a 246,000-square-foot commercial warehouse on property in Moreno Valley (the property); (2) defendant was the construction lender for the project; (3) plaintiff performed all its obligations under its

---

contractor and may, at its option, withhold funds pursuant to a stop notice or bonded stop notice given by anyone other than an original contractor. . . ." (Italics added.)

[2]At all relevant times here, " '[p]ayment bond' mean[t] a bond with good and sufficient sureties which is conditioned for the payment in full of all claimants and also by its terms is made to inure to the benefit of all claimants so as to give such persons a right of action to recover upon such bond in any suit brought to foreclose the liens provided for in this title or in a separate suit brought on such bond. . . ." (§ 3096.)

" 'Stop notice' means a written notice, signed and verified by the claimant or his or her agent, stating in general terms all of the following: [¶] (a) The kinds of labor, services, equipment, or materials furnished or agreed to be furnished by such claimant. [¶] (b) The name of the person to or for whom the same was done or furnished. [¶] (c) The amount in value, as near as may be, of that already done or furnished and of the whole agreed to be done or furnished. [¶] (d) The name and address of the claimant. . . ." (§ 3103.)

" 'Construction lender' means any mortgage or beneficiary under a deed of trust lending funds with which the cost of the work of improvement is, wholly or in part, to be defrayed . . . ." (§ 3087.)

contract with Borneo; (4) Borneo breached the contract by failing to pay plaintiff for labor, materials, supplies and services furnished by plaintiff and by plaintiff's subcontractors; (5) the reasonable value of such unpaid labor, materials, supplies and services was $1,096,069; (6) the day after Borneo breached its contract with plaintiff, Borneo filed a petition for bankruptcy in federal court; (7) thereafter, plaintiff recorded a verified claim of lien on the property in the amount of $1,096,069 and served defendant with a verified bonded stop notice in the foregoing amount; (8) at the time of such service, defendant had in its possession or in its control funds due or to become due to plaintiff; and (9) defendant refused to release such funds to plaintiff.

On its cause of action to enforce payment on the bonded stop notice, plaintiff requested judgment against defendant in the amount of $1,096,069, plus the premium on the bond and its costs in bringing the action.

Defendant answered plaintiff's complaint, denying its allegations and alleging 10 affirmative defenses. The eighth such defense was that plaintiff had failed to record a payment bond as required by sections 3159 and 3162.

Thereafter, defendant acquired title to the property through its foreclosure sale, and plaintiff dismissed its action against all the defendants except defendant, and dismissed its cause of action against defendant to foreclose a mechanic's lien.

Then, defendant moved for judgment on the pleadings. The basis for the motion was that plaintiff had failed to allege facts sufficient to state a cause of action against defendant because plaintiff had not alleged that it had recorded a payment bond, and that such recordation was a condition precedent to an enforceable stop notice.[3] Plaintiff opposed defendant's motion and defendant replied to plaintiff's opposition.

After a hearing, for which there is no transcript in the record, the trial court entered a judgment stating that defendant was entitled to judgment on the pleadings "on the grounds specified in [its] [m]otion," and dismissing defendant from the action.

This appeal followed.

---

[3] In its responses to defendant's request for admissions, plaintiff admitted that it had not recorded a payment bond.

## Discussion

In pursuing its appeal, plaintiff contends that the trial court's interpretation of sections 3159 and 3162 was incorrect because the interpretation ignored the first sentence of section 3162, which requires the lender to withhold funds "upon receipt of a bonded stop notice." We agree.

"The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. . . . An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Here, the trial court apparently relied exclusively on the second sentences of sections 3159 and 3162 without considering such sentences in the context of the first sentence of section 3162. The first sentence of section 3162 states the general rule that "upon receipt of a bonded stop notice the construction lender *shall* . . . withhold from the borrower . . . sufficient money to answer the claim . . . ." (Italics added.)

Section 3162 goes on to provide, if a payment bond of the original contractor has been recorded, then the lender "*shall* withhold funds pursuant to a bonded stop notice filed by [the] original contractor and *may*, at its option, withhold funds pursuant to a stop notice or bonded stop notice given by anyone other than [the] original contractor." (Italics added.)

When the second sentence in section 3162 is read in light of the first sentence of the statute, it is clear that the second sentence provides an *exception* to the general rule in the first sentence that a lender must withhold funds upon receipt of a bonded stop notice. The exception is that the lender need not withhold funds upon receipt of a bonded stop notice given by anyone other than the original contractor (the contractor) if the contractor has recorded a payment bond. The reason for the exception is that a claimant other than the contractor has recourse to the contractor's bond (§ 3096, fn. 2, *ante*). In the case of the contractor, however, recourse to its own bond is of no avail. Accordingly, where there is such a bond, the lender must withhold funds upon receipt of a bonded stop notice given by the contractor but need not withhold funds upon receipt of a bonded stop notice given by anyone else. If, however, as in the case here, the contractor has not recorded a bond, then the second sentence of section 3162 (and its counterpart in section 3159) does not apply and the general rule in the first sentence of section

3162 as to the lender's unconditional duty to anyone, including a contractor, who presents a bonded stop notice, does apply.

█ "When a statute contains an exception to a general rule laid down therein, that exception is strictly construed [citation] [and] [o]ther exceptions are necessarily excluded." (*Goins* v. *Board of Pension Commissioners* (1979) 96 Cal.App.3d 1005, 1009 [158 Cal.Rptr. 470].)

█ Here, the trial court's interpretation of section 3162 would result in a second exception to the general rule that a lender must withhold funds upon receipt of a bonded stop notice, namely that a lender need not withhold funds upon receipt of a bonded stop notice given by a contractor who has not recorded a payment bond. However, there is nothing in the second sentence in section 3162 which would support such an exception. "Had the framers intended also to [make an exception for a contractor who has not recorded a payment bond], it would have been simple so to provide. The court cannot insert qualifying provisions or rewrite the statute." (*Goins* v. *Board of Pension Commissioners*, *supra*, 96 Cal.App.3d 1005, 1009-1010.)

Defendant contends that the conditional structure of the second sentence of section 3162 requires the condition (the contractor's recording of the bond) to be met before the result (the lender's withholding of the funds) can occur. "If the condition does not exist," defendant argues, "the result does not occur."

However, defendant's theory is both illogical and contradictory to the provision in the first sentence of section 3162 allowing the lender to disregard an unbonded stop notice. Defendant's theory is illogical because it assumes, in every case where a condition leads to a result, that the absence of the condition will lead to the absence of the result. However, unless, unlike the case here, the condition is the same as the result ("If it rains then it will rain"), the absence of the condition will not necessarily lead to the absence of the result, because the result could occur as a result of other conditions. For example, in the conditional statement "If it rains then the ground will be wet," the absence of the condition (rain) does not necessarily lead to the absence of the result (wet ground) because the ground could be wet as a result of other conditions, such as the use of a hose or a water hydrant.[4] Accordingly, to return to the case here, the absence of the condition (the contractor's recording of the bond) does not necessarily lead to the absence of the result (the lender's withholding of the funds), because the

___

[4]In its opposition to defendant's motion for judgment on the pleadings, plaintiff used the example "If children are in the car, then one must drive carefully," to defeat defendant's

lender could be required to withhold the funds as a result of other statutory conditions (such as the one in the first sentence of section 3162).

Otherwise, as we have noted, defendant's theory is contrary to the provision in the first sentence of section 3162 allowing a lender to disregard an unbonded stop notice. This is so because, when we apply the theory to the *entire* second sentence of section 3162, then, in a situation where the contractor has not recorded a payment bond, the lender not only is *not* required to withhold funds upon receipt of a *bonded* stop notice given by the contractor, but also *is* required to withhold funds upon receipt of an *unbonded* stop notice given by anyone else. However, the first sentence of section 3162 allows the lender to disregard an unbonded stop notice. (See *Manos* v. *Degen* (1988) 203 Cal.App.3d 1237, 1240 [250 Cal.Rptr. 493].) Accordingly, defendant's interpretation of the second sentence of section 3162 is incorrect.

As we have noted, sections 3159 and 3162 were amended in 1994. Section 3162 now provides, in relevant part:

"(a) Upon receipt of a stop notice pursuant to Section 3159, the construction lender may, and upon receipt of a bonded stop notice the construction lender shall, *except as provided in this section,* withhold from the borrower . . . sufficient money to answer the claim . . . . The construction lender shall be subject to the following:

"(1) The construction lender shall withhold funds pursuant to a bonded stop notice filed by an original contractor, *regardless of whether a payment bond has previously been recorded* in the office of the county recorder where the site is located in accordance with Section 3235.

"(2) The construction lender shall withhold funds pursuant to a bonded stop notice filed by any other person . . . unless a payment bond has previously been recorded in the office of the county recorder where the site is located in accordance with Section 3235. If a payment bond has previously been recorded, the construction lender may, at its option, withhold funds pursuant to the bonded stop notice or stop notice, or may elect not to withhold pursuant to the bonded stop notice or stop notice given by anyone other than an original contractor." (Italics added.)

Subdivisions (a)(1) and (a)(2) of the amended section 3162 have replaced the second sentence of former section 3159.

reasoning. In other words, to argue, if children are not in the car, then one need not drive carefully, is absurd.

"While an intention to change the law is usually inferred from a material change in the language of the statute [citations], a consideration of the surrounding circumstances may indicate, on the other hand, that the amendment was merely the result of a legislative attempt to clarify the true meaning of the statute." (*Martin* v. *California Mut. B. & L. Assn.* (1941) 18 Cal.2d 478, 484 [116 P.2d 71].)

Here, the "surrounding circumstances" are the application of the relevant principles of logic and statutory construction to sections 3159 and 3162 before their amendment. As we have explained, such application shows that the "true meaning" of the former statutes was that the lender had an unconditional duty to withhold funds upon receipt of a contractor's bonded stop notice. Thus, the amendments were "merely the result of a legislative attempt to clarify [such] true meaning."

Because the trial court's granting of defendant's motion for judgment on the pleadings was not based on the "true meaning" of former sections 3159 and 3162, the court erred in granting the motion and the judgment in favor of defendant must be reversed.

## DISPOSITION

The judgment is reversed.

Ramirez, P. J., and Hollenhorst, J., concurred.