[No. S053418. Dec. 17, 1998.]

SALVADOR CALVILLO-SILVA et al., Plaintiffs and Appellants, v.
HOME GROCERY et al., Defendants and Respondents.

**COUNSEL**

Joseph W. Carcione, Jr.; Naille G. Yamane; Tanke & Willemsen, Tony J. Tanke and Gary L. Simms for Plaintiffs and Appellants.

Bledsoe, Cathcart, Diestel, Livingston & Pedersen, Renee Welze Livingston, Sheila T. Addiego; Ropers, Majeski, Kohn & Bentley, Lawrence M. Guslani, Susan H. Handelman, Denise A. Cole and Terry Anastassiou for Defendants and Respondents.

**OPINION**

**BAXTER, J.**—Section 847 of the Civil Code[1] provides that in certain circumstances an owner of any estate or other interest in real property shall not be liable for injuries that occur upon the property during or after the injured person's commission of any one of 25 felonies listed in the statute. (§ 847, subds. (a)-(e).) Explicitly, however, section 847 "does not limit the

---

[1]All further statutory references are to the Civil Code unless otherwise specified.

liability of an owner or an owner's agent which otherwise exists for willful, wanton, or criminal conduct, or for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." (*Id.*, subd. (f).)

In this case, the trial court granted defendants' motion for summary judgment on the basis that section 847 barred the action. The evidence showed that one of the defendants intentionally fired a handgun at one of several men exiting their store after an armed robbery attempt and that plaintiff Salvador Calvillo-Silva, rendered a paraplegic from the shooting, was later convicted of the felony of attempted grand theft in connection with the criminal episode. The Court of Appeal reversed, finding that section 847 does not limit liability for intentional shootings. We granted review to determine the scope of the statutory immunity, and in particular to consider whether section 847 protects the intentional use of deadly force when a statutorily enumerated felony has been committed.[2]

Application of settled rules of statutory construction leads us to conclude that when the statutory predicates have been established, an owner is entitled to immunity pursuant to section 847 unless, as mentioned in subdivision (f) of the statute, liability "otherwise exists for willful, wanton, or criminal conduct, or for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." Consistent with established principles of tort law, we find that the statutory reference to willful or wanton conduct relates to intentional *wrongful* conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results. So construed, the immunity granted by section 847 extends not only to negligent conduct, but also to intentionally injurious acts that are justifiable under the circumstances (see § 50 [codifying the privileges of self-defense, defense of others and defense of property]) and hence not wrongful.

Although we disagree with the Court of Appeal's conclusion that the intentional use of deadly force is categorically excepted from the scope of section 847's immunity, we affirm that court's decision to reverse the grant

---

[2]After review was granted, we requested the parties to also brief whether the partial immunity granted by subdivision (a) of section 847 to "[a]n owner . . . of any estate or any other interest in real property, whether possessory or nonpossessory," extends to agents and/or employees of such owners, and, if agents and employees may not assert the partial immunity, whether section 847 nonetheless immunizes owners from respondeat superior liability predicated on the conduct of their agents and/or employees. After further review of the matter, we conclude we lack an appropriate record in this case for resolving the employee/agent and respondeat superior liability issues. We therefore express no opinion on those issues today.

of summary judgment because the evidence in the record gives rise to conflicting inferences as to whether defendants' use of force was justified under the circumstances.

## FACTUAL AND PROCEDURAL HISTORY

On October 11, 1991, plaintiffs Salvador and Bertha Calvillo-Silva filed a complaint against Home Grocery, its owners (John Pacheco and Ramon Block), its employees (Don Pacheco and Robert Sharp III), and the lessor of the premises (Daniel Dieguez), seeking compensatory and punitive damages for injuries inflicted upon plaintiff Salvador Calvillo-Silva on the premises where Home Grocery was located.[3] The complaint alleged causes of action for assault and battery, general negligence, intentional and negligent infliction of emotional distress, premises liability and loss of consortium. In their answers, defendants asserted several affirmative defenses, including contributory negligence, self-defense and defense of property, but they did not rely on the immunity provisions of section 847.

In September of 1993, defendant Dieguez moved for summary judgment, arguing, among other things, that as merely the owner and lessor of the premises, he had no duty to protect plaintiff. The superior court, on its own initiative, requested briefing on the applicability of section 847 and subsequently granted Dieguez's summary judgment motion.[4] Thereafter, the remaining defendants moved for summary judgment based upon section 847.

In support of their motion, defendants contended the following facts, among others, were not subject to dispute. From 1972 through October of 1990, Block and John Pacheco, individually and doing business as Home Grocery, owned a leasehold interest in the property where they operated their store. Plaintiff incurred injuries upon the subject property. Plaintiff was charged by information on the following criminal counts arising out of the events occurring at Home Grocery at the time of plaintiff's injury: burglary (Pen. Code, § 459); attempted robbery (Pen. Code, §§ 664, 211); false imprisonment (Pen. Code, § 236); assault with a deadly weapon (Pen. Code, § 245, subd. (a)); and attempted grand theft (Pen. Code, §§ 664, 487, former subd. 2). The information also alleged that plaintiff personally used a deadly weapon in the commission of a felony (Pen. Code, § 12022, subd. (b)) and that he acted with knowledge that another principal was armed with a firearm (Pen. Code, § 12022, subd. (d)). Pursuant to a plea bargain, plaintiff pleaded nolo contendere to one count of felony attempted grand theft (Pen. Code, §§ 664, 487, former subd. 2) and the remaining counts were dismissed. None of the defendants herein was ever arrested or criminally charged for the shooting of plaintiff.

---

[3]Hereafter, "plaintiff" in the singular refers to Salvador Calvillo-Silva.
[4]Plaintiffs later settled with Dieguez, who is no longer a party to this action.

In opposition to defendants' motion, plaintiff offered his own declaration and deposition testimony attesting to the following facts. Plaintiff entered Home Grocery on October 12, 1990, without a knife or any other weapon, to purchase a soda. As plaintiff started to pay for the soda at the front counter, three men unknown to him entered the store and attempted a robbery. Fearing for his safety, plaintiff tried to exit the store. He was then shot in the back by one or more persons. At all times during the attempted robbery, plaintiff was unarmed, took no part in the crime and did nothing to provoke the action against him.

Robert Sharp III gave the following statement to the San Mateo County Sheriff's office. He and Don Pacheco were working at Home Grocery when four males entered the premises and attempted to commit a robbery. One of the intruders pointed a large black pistol at Pacheco and demanded money. Another intruder (later identified as plaintiff) picked up a knife from behind the "deli area" and held it against Sharp's throat. Pacheco made several attempts to open the cash register but failed. The longer the intruders were in the store, the more nervous they appeared to become and at one point the man with the pistol slapped Pacheco in the face. Two of the intruders then left the store through the front door. The man with the pistol also moved toward the front door while the man with the knife released Sharp and headed toward the front door. As soon as the man with the pistol exited the door, Pacheco grabbed a gun from under the counter and shot at plaintiff as plaintiff was running out of the store.[5] Sharp took the gun from Pacheco, jumped over the counter and went to the door. Sharp saw the man with the pistol still pointing the pistol at the store. He then saw plaintiff lying wounded in the parking lot. He pointed the gun at plaintiff and yelled at him not to move.

Although Sharp claimed that plaintiff had held a knife to his throat during the incident, plaintiff offered evidence that Don Pacheco never saw plaintiff with a knife and never saw a knife being used on Sharp. Despite searches of plaintiff and the premises by law enforcement officers, no knife was ever found.

Plaintiff was the only person ever identified and apprehended for the attempted robbery at the Home Grocery premises. Plaintiff offered his own sworn declaration explaining that he entered a nolo contendere plea to the attempted grand theft count in order to avoid a trial and a long prison term.

[5] The subsequent deposition testimony of both Sharp and Don Pacheco differed from Sharp's report to the sheriff's office. Sharp testified that Pacheco shot at the man with the gun while he was still standing in the doorway. Pacheco testified he shot toward the last two intruders while both were still inside the store.

Plaintiff thought he would not receive a fair trial because of his "ethnic background" and the circumstances of the crime. At the time he entered his plea, plaintiff believed it would not affect his rights to recover compensation for his injuries; he was not informed otherwise.

The superior court granted summary judgment, finding no triable issue of fact as to the availability of section 847 as a complete defense for all defendants. As part of its ruling, the court determined it was unlikely that plaintiffs could adduce evidence of any willful, wanton, or criminal conduct so as to bring the case within subdivision (f) of section 847.

The Court of Appeal overturned the summary judgment. Although the court unanimously rejected plaintiffs' argument that section 847 applies only with respect to dangerous conditions or uses of an owner's land, it ultimately determined by a split vote that the statute immunized only negligent conduct and did not protect the intentional use of deadly or injurious force. Nonetheless, the court explained, defendants were free to defend the lawsuit on the basis that they acted reasonably in self-defense during the events of October 12, 1990. (See § 50.) The dissenting justice concluded that the statutory immunity extended to intentional acts, but nevertheless found that summary judgment was inappropriate because of a potential triable issue of material fact as to whether the injurious conduct was "willful" within his understanding of section 847. We granted defendants' petition for review.

## DISCUSSION

### A. *Background*

The general policy of California with respect to tort liability is set forth in section 1714. For well over 100 years, section 1714 has provided in relevant part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself." (§ 1714, subd. (a) [first enacted 1872, amended by Stats. 1978, ch. 929, § 2, p. 2904].)

Three decades ago, *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] relied upon the basic policy articulated in section 1714 to hold that a possessor of land generally owes a duty of care to all persons who enter the possessor's premises, whether the person is an invitee (business visitor), a licensee (social guest), or a trespasser. That decision disapproved of the former common law rule recognizing that, although a possessor of land owed licensees and trespassers the

duty to refrain from willful or wanton injury, such persons were obliged to take the premises as found with regard to any alleged defective condition. In eliminating the rule of limited liability for defective conditions of land, *Rowland* v. *Christian* concluded that "[a] man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose." (69 Cal.2d at p. 118.)

When the Legislature considered enactment of section 847 in 1985, it heard arguments from proponents of the measure that immunity was needed "to address the increasing number of attempts by criminals injured in the course of their crimes to demand compensation from their intended victims" and to provide a means to "facilitate the early dismissal of lawsuits of this type." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended July 8, 1985, pp. 9-10; see Assem. 3d reading analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, pp. 2-3.) In evaluating the matter, the Legislature specifically considered two controversial cases in which plaintiffs had sought substantial sums for injuries they incurred while trespassing on the property of others. In one case involving public property, a plaintiff sued a school district for $3 million after he fell through a skylight during an attempt to illegally remove floodlights from the roof of a school gymnasium. The plaintiff, who was rendered a quadriplegic from the fall, obtained a settlement of $260,000 plus monthly payments of $1,200 for life. In another case, a motorcycle thief who trespassed and went joyriding across a farmer's field received nearly $500,000 in damages from the farmer for injuries he sustained after hitting a pothole in the field.[6] (See Assem. Com. on Judiciary, Republican Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985; see also Sen. Rules Com., Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended Sept. 4, 1985, p. 3.) The bill to enact section 847 was viewed as proposing a partial reversal of *Rowland* v. *Christian*, *supra*, 69 Cal.2d 108, which in effect had permitted such lawsuits to be maintained. (Assem. Com. on Judiciary, Republican Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985.) As noted by various legislative committees, the sentiment providing the impetus for the legislation was reflected in the following statements of the bill's author: "[W]hatever may be said in defense of the alleged right of a trespasser to sue a

---

[6]According to defendants and the Court of Appeal below, the Legislature supposedly also considered a third case in which the estate of a robber obtained $1,500 in settlement of a wrongful death action where the robber had suffered a fatal seizure when apprehended outside a store he had just robbed. The reference to this incident, described as one of three "background cases" for the legislation, appeared on a single sheet of paper evidently found in the legislative bill file. As there is no indication when or for whom the document was prepared, or who authored it or what its purpose may have been, we shall not assume that the Legislature, as a whole, specifically considered this third lawsuit in enacting the statute.

landowner for the trespasser's injuries sustained while trespassing, there is almost nothing to be said on behalf of the thief, a cattle rustler or other felon who is injured in the course of his felony. Such a wrongdoer should not be allowed by the law to add still more injury to insult."[7] (Sen. Rules Com., Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended Sept. 4, 1985, p. 2; see Assem. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended on May 30, 1985, p. 2; Assem. 3d reading analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, p. 2.)

### B. *Scope of Immunity under Section 847*

As enacted, section 847 limits the liability of an owner of any estate or other interest in real property for injuries that occur upon the property during or after the injured person's commission of any one of 25 enumerated felonies.[8] (§ 847, subds. (a), (b).) By its own terms, however, section 847 "does not limit the liability of an owner or an owner's agent which otherwise exists for willful, wanton, or criminal conduct, or for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." (*Id.*, subd. (f).)

■ The principal question we must decide is this: Does section 847 provide immunity for the intentional use of deadly force against one who is later convicted of a statutorily enumerated felony? Plaintiffs answer this question in the negative, reading section 847 to confer immunity solely for negligent conduct relating to dangerous or defective conditions and uses of land. Conversely, defendants assert section 847 also immunizes unpremeditated actions taken in response to any of the enumerated felonies. The issue is one of legislative intent and statutory construction.

---

[7]The full context in which the author's statements was noted appeared as follows: "According to the author, this bill is intended to reverse only in part the ruling in *Rowland* v. *Christian* as to trespassers, i.e., trespassers who are injured during the course of, or after the commission of, any specified felony, or attempt to commit a specified felony, for which they are subsequently convicted. [¶] The author explains under present law, a thief could come uninvited onto a rancher's property in the dark of night for the purpose of stealing farm machinery or rustling cattle, could fall in a hole or be kicked in the head by a cow he is trying to steal, and sue the rancher for his personal injuries! [¶] He further states whatever may be said in defense of the alleged right of a trespasser to sue a landowner for the trespasser's injuries sustained while trespassing, there is almost nothing to be said on behalf of the thief, a cattle rustler or other felon who is injured in the course of his felony. Such a wrongdoer should not be allowed by the law to add still more injury to insult." (Sen. Rules Com., Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended Sept. 4, 1985, p. 2; see Assem. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, p. 2; Assem. 3d reading analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, p. 2.)

[8]Section 847 describes 24 felonies and lists the 25th felony as any attempt to commit a listed crime other than an assault. (*Id.*, subd. (b).)

██ We begin our analysis by acknowledging that "[t]he goal of statutory construction is to ascertain and effectuate the intent of the Legislature." (*Pacific Gas & Electric Co.* v. *County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) Ordinarily, the language of the statute provides the most reliable indication of legislative intent. (*Ibid.*) But when the statutory language is ambiguous, "the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes." (*Ibid.*) In such cases, a court may consider both the legislative history of the statute and the wider historical circumstances of its enactment to ascertain the legislative intent. (*Ibid.*; *Watts* v. *Crawford* (1995) 10 Cal.4th 743, 753 [42 Cal.Rptr.2d 81, 896 P.2d 807].)

Section 847 states in relevant part:

"(a) An owner . . . of any estate or any other interest in real property, whether possessory or nonpossessory, shall not be liable to any person for any injury or death that occurs upon that property during the course of or after the commission of any of the felonies set forth in subdivision (b) by the injured or deceased person.

"(b) The felonies to which the provisions of this section apply are the following: . . . (18) burglary; (19) robbery; . . . (22) any felony in which the defendant personally used a dangerous or deadly weapon; . . . (24) grand theft as defined in Sections 487 and 487a of the Penal Code; and (25) any attempt to commit a crime listed in this subdivision other than an assault.

"(c) The limitation on liability conferred by this section arises at the moment the injured or deceased person commences the felony or attempted felony and extends to the moment the injured or deceased person is no longer upon the property.

"(d) The limitation on liability conferred by this section applies only when the injured or deceased person's conduct in furtherance of the commission of a felony specified in subdivision (b) proximately or legally causes the injury or death.

"(e) The limitation on liability conferred by this section arises only upon the charge of a felony listed in subdivision (b) and the subsequent conviction of that felony or a lesser included felony or misdemeanor arising from a charge of a felony listed in subdivision (b). During the pendency of any such criminal action, a civil action alleging this liability shall be abated and the statute of limitations on the civil cause of action shall be tolled.

"(f) This section does not limit the liability of an owner or an owner's agent which otherwise exists for willful, wanton, or criminal conduct, or for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

"(g) The limitation on liability provided by this section shall be in addition to any other available defense."

Thus, an owner of "any estate or any other interest in real property, whether possessory or nonpossessory" (§ 847, subd. (a)) must establish the following elements as a precondition to immunity under section 847: (1) the plaintiff's injury or death must occur upon the owner's property "during the course of or after the commission of" any of the statutorily enumerated felonies by the plaintiff (*id.*, subds. (a), (b)); (2) the plaintiff's injury or death must be "proximately or legally" caused by the plaintiff's "conduct in furtherance of the commission" of the felony (*id.*, subd. (d)); and (3) the plaintiff must have been charged with an enumerated felony and subsequently convicted of "that felony or a lesser included felony or misdemeanor arising from [the] charge"[9] (§ 847, subd. (e)).

■ Because the issue potentially is dispositive, we shall first address whether section 847's limitation on liability applies to conduct that is unrelated to the physical conditions or uses of an owner's property. Starting with the statutory language, we observe there is no provision explicitly stating that immunity is available for conduct that does not relate to conditions or uses of property. Subdivision (a), however, declares that an owner "shall not be liable . . . *for any injury or death that occurs upon that property* during the course of or after the commission of" any of the listed felonies by the plaintiff. (§ 847, subd. (a), italics added.) Subdivision (f) further specifies that section 847 does not limit the liability of an owner or an owner's agent "which otherwise exists [1] for willful, wanton, or criminal conduct, *or* [2] for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." (Italics added.)

By delineating only two conduct-based exceptions to its provision limiting liability "for any injury or death that occurs upon [the] property," section 847 necessarily implies that conduct not falling within those two exceptions is immunized when the statutory elements have been shown. (See *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881-882, fn. 4 [221 Cal.Rptr.

---

[9]In this case, plaintiff pleaded nolo contendere to the statutorily enumerated felony of attempted grand theft. A nolo contendere plea to a crime punishable as a felony has the same effect as a guilty plea for all purposes. (Pen. Code, § 1016.) A plea of guilty constitutes a conviction. (*Stephens* v. *Toomey* (1959) 51 Cal.2d 864, 869 [338 P.2d 182].)

509, 710 P.2d 309] [when a statute expresses certain exceptions to a general rule, other exceptions are necessarily excluded]; *Building Profit Corp.* v. *Mortgage & Realty Trust* (1995) 36 Cal.App.4th 683, 689 [42 Cal.Rptr.2d 533].) These two exceptions are stated in the alternative, and it is only the exception regarding the failure to guard or warn that makes direct reference to "a dangerous condition, use, structure, or activity." (§ 847, subd. (f).) As structured, then, subdivision (f) makes reasonably clear that the other exception for "willful, wanton, or criminal conduct" need not relate specifically to dangerous conditions, uses, structures, or activities on an owner's land. (*Ibid.*) In sum, section 847 confers immunity for any "failure to guard or warn against a dangerous condition, use, structure, or activity" that is not "willful or malicious" and for any other type of "conduct" that is not "willful, wanton, or criminal," so long as the statutory predicates for the immunity have been established.

This reading is entirely consistent with section 847's underlying purpose "to protect landowners and possessors from lawsuits brought by persons injured on the property during the commission of a crime." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended July 8, 1985, p. 3; see Assem. 3d reading analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, pp. 2-3.) As the legislative history discloses, section 847 was enacted to correct a perceived injustice in the law that had allowed lawbreakers to indirectly benefit from their crimes at the expense of the victimized owners and possessors. Such purpose is more fully effectuated by not implying a sweeping exception for lawbreakers whose injuries do not involve physical conditions or uses of property.

To support their narrower construction of the statutory immunity, plaintiffs rely upon a press release in which the legislation's author, Assemblyman Alister McAlister, responded to criticisms by the California Trial Lawyers Association and labor groups that his bill would sanction hidden spring guns and violent attacks upon hapless trespassers. In that public statement McAlister undertook to explain that "the bill's clear purpose is not to immunize anyone from liability for deliberate or reckless and irresponsible assaults, but is *solely aimed at preventing landowners' liability to felonious trespassers for alleged defective conditions of real estate*." (Press release, Jan. 9, 1985, italics added.) According to plaintiffs, McAlister's statement furnishes persuasive evidence that the Legislature intended to confine its grant of immunity to instances of alleged premises liability.

■ In construing a statute we do not consider the objective of an authoring legislator when there is no reliable indication that the Legislature

as a whole was aware of that objective and believed the language of the proposal would accomplish it. (See *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764-765, fn. 10 [274 Cal.Rptr. 787, 799 P.2d 1220]; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371].) In this case, no such indication appears. While many of the legislative analyses did refer to the author's explanations of the proposed law (see *ante*, fn. 7), none suggested that the "sole" purpose of the legislation was to preclude liability for defective conditions or uses of property. Nor did any of the legislative analyses or reports describe the author as having taken such a position. In any case, even assuming other legislators were aware of the author's press release, restriction of the immunity to cases of alleged premises liability cannot be reconciled with the plain meaning of the statutory language.

Plaintiffs appear to also contend that the placement of section 847 in the "Real or Immovable Property" part of the Civil Code, in a chapter entitled Obligations of Owners, strongly suggests that the Legislature viewed the statute as one pertaining solely to issues of premises liability. They are mistaken. Although consideration may be given to chapter and section headings in codes in interpreting the various sections (see *People* v. *Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036]; *American Federation of Teachers* v. *Board of Education* (1980) 107 Cal.App.3d 829, 836 [166 Cal.Rptr. 89]), the particular language of section 847 fails to support such a view.

 Having determined that the immunity conferred by section 847 is not restricted to conduct relating solely to physical conditions or uses of land, we next consider whether the statute limits liability only for negligence or whether its protection further extends to the intentional use of deadly force where, as here, the person injured by such force is later convicted of one of the statutorily enumerated felonies. To resolve this issue, we must examine section 847's proviso that it does not limit liability "which otherwise exists for willful, wanton, or criminal conduct." (§ 847, subd. (f).)

Although section 847 does not define what it means by the terms "willful" or "wanton," the concept of liability for willful behavior is a familiar one that has appeared in a variety of statutory and common law contexts. (E.g., *Williams* v. *Carr* (1968) 68 Cal.2d 579 [68 Cal.Rptr. 305, 440 P.2d 505] [action for willful misconduct under automobile guest statute];[10] *Emery* v. *Emery* (1955) 45 Cal.2d 421 [289 P.2d 218] [recognizing right of unemancipated minor to sue parent for a willful or malicious tort]; *Mercer-Fraser*

---

[10]California's automobile guest statute was codified in various forms at different times. It provided, in effect, that no person who rode in a vehicle owned by that person and driven by another with permission and no person who accepted a ride as a guest without giving

*Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102 [251 P.2d 955] [workers' compensation statute authorizing increased compensation for serious and willful misconduct of the employer]; *Cope* v. *Davison* (1947) 30 Cal.2d 193 [180 P.2d 873, 171 A.L.R. 667] [automobile guest statute]; *Colich & Sons* v. *Pacific Bell* (1988) 198 Cal.App.3d 1225 [244 Cal.Rptr. 714] [indemnity action against a public utility under tariff provisions not limiting liability for willful misconduct, fraudulent conduct or violations of law]; *New* v. *Consolidated Rock Products Co.* (1985) 171 Cal.App.3d 681, 687 [217 Cal.Rptr. 522] [action against a landowner under the "willful or malicious failure to guard or warn" exception to a recreational use immunity statute]; *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903 [159 Cal.Rptr. 125] [same]; *Johns-Manville Sales Corp.* v. *Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 923 [158 Cal.Rptr. 463] [workers' compensation statute]; *Simmons* v. *Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341 [133 Cal.Rptr. 42] [action for willful misconduct against a railroad company]; *Morgan* v. *Southern Pacific Trans. Co.* (1974) 37 Cal.App.3d 1006 [112 Cal.Rptr. 695] [same].)

While it bears emphasis that legislative use of the term "willful" may not be precisely the same for all purposes (see generally, *Kwan* v. *Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174 [28 Cal.Rptr.2d 371]), it has been generally recognized in the context of tort liability that the usual meaning assigned to "willful," as well as to "wanton" and to other similar terms, is that " ' "the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." (Prosser, Law of Torts (4th ed. 1971) § 34, p. 185.)' " (*New* v. *Consolidated Rock Products Co., supra,* 171 Cal.App.3d at p. 689, citing *Morgan* v. *Southern Pacific Trans. Co., supra,* 37 Cal.App.3d at p. 1011.) One common description of willful misconduct is that it refers to "intentional wrongful conduct, done either with a knowledge that serious injury to [another] probably will result or with a wanton and reckless disregard of the possible results." (E.g., *Reuther* v. *Viall* (1965) 62 Cal.2d 470, 475 [42 Cal.Rptr. 456, 398 P.2d 792] [automobile guest statute]; *Meyer* v. *Blackman* (1963) 59 Cal.2d 668, 677 [31 Cal.Rptr. 36, 381 P.2d

---

compensation had any right of action for civil damages against the driver of the vehicle on account of personal injury to or the death of the owner or guest during the ride, "unless the plaintiff in any such action establishe[d] that the injury or death proximately resulted from the intoxication or willful misconduct of the driver." (Veh. Code, § 17158, as amended by Stats. 1961, ch. 1600, § 1, p. 3429.) In *Cooper* v. *Bray* (1978) 21 Cal.3d 841 [148 Cal.Rptr. 148, 582 P.2d 604] and *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], this court found aspects of the statute unconstitutional on equal protection grounds, but in neither case expressed any question regarding the settled interpretation of the statutory reference to "willful misconduct."

916] [same]; *Goncalves* v. *Los Banos Mining Co.* (1962) 58 Cal.2d 916, 918 [26 Cal.Rptr. 769, 376 P.2d 833] [same]; *Colich & Sons* v. *Pacific Bell*, *supra*, 198 Cal.App.3d at p. 1242; see also *Williams* v. *Carr*, *supra*, 68 Cal.2d at p. 584; *Emery* v. *Emery*, *supra*, 45 Cal.2d at p. 426; *Mercer-Fraser Co.* v. *Industrial Acc. Com.*, *supra*, 40 Cal.2d at p. 120.) More recently, that same description has been used to define "willful or wanton misconduct," a phrase which in turn has been utilized to explain when a failure to guard or warn against a dangerous condition has been "willful or malicious" for purposes of the recreational use immunity statute codified at section 846. (*Charpentier* v. *Von Geldern* (1987) 191 Cal.App.3d 101, 113 [236 Cal.Rptr. 233]; *Nazar* v. *Rodeffer* (1986) 184 Cal.App.3d 546, 552 [229 Cal.Rptr. 209]; *New* v. *Consolidated Rock Products Co.*, *supra*, 171 Cal.App.3d at p. 689; *O'Shea* v. *Claude C. Wood Co.*, *supra*, 97 Cal.App.3d at p. 912.)

Though the decisions addressing the issue of liability for willful or wanton behavior vary somewhat in their emphasis, the case law appears relatively uniform on the following points. ■ First, it is generally recognized that willful or wanton misconduct is separate and distinct from negligence, involving different principles of liability and different defenses. (*Shepardson* v. *McLellan* (1963) 59 Cal.2d 83, 89 [27 Cal.Rptr. 884, 378 P.2d 108] [willful misconduct]; *Palazzi* v. *Air Cargo Terminals, Inc.* (1966) 244 Cal.App.2d 190, 195 [52 Cal.Rptr. 817] [wanton misconduct].) Unlike negligence, which implies a failure to use ordinary care, and even gross negligence, which connotes such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, willful misconduct is not marked by a mere absence of care. Rather, it " ' "involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences." ' " (*Cope* v. *Davison*, *supra*, 30 Cal.2d at p. 201, citing *Meek* v. *Fowler* (1935) 3 Cal.2d 420, 425 [45 P.2d 194]; accord, *Mercer-Fraser Co.* v. *Industrial Acc. Com.*, *supra*, 40 Cal.2d at p. 120.) So, for example, a person who commits an assault and battery may be guilty of willful misconduct (see *Mercer-Fraser Co.* v. *Industrial Acc. Com.*, *supra*, 40 Cal.2d at p. 116; *Mahoney* v. *Corralejo* (1974) 36 Cal.App.3d 966, 972 [112 Cal.Rptr. 61]), but a person who fails to perform a statutory duty, without more, is not guilty. (*Mercer-Fraser Co.* v. *Industrial Acc. Com.*, *supra*, 40 Cal.2d at p. 117; *Meek* v. *Fowler*, *supra*, 3 Cal.2d at p. 425; *Colich & Sons* v. *Pacific Bell*, *supra*, 198 Cal.App.3d at p. 1242.) While the word "willful" implies an intent, the intention must relate to the misconduct and not merely to the fact that some act was intentionally done. (*Cope* v. *Davison*, *supra*, 30 Cal.2d at p. 201, relying upon *Meek* v. *Fowler*, *supra*, 3 Cal.2d at p. 425; accord, *Mercer-Fraser Co.* v. *Industrial Acc. Com.*, *supra*, 40 Cal.2d at p. 118.) Thus, even though some cases of negligence may involve intentional actions, the mere intent to do an act which constitutes

negligence is not enough to establish willful misconduct. (*Cope* v. *Davison, supra,* 30 Cal.2d at p. 201, relying upon *Meek* v. *Fowler, supra,* 3 Cal.2d at pp. 425-426; accord, *Mercer-Fraser Co.* v. *Industrial Acc. Com., supra,* 40 Cal.2d at p. 118.)

■ Second, willfulness generally is marked by three characteristics: (1) actual or constructive knowledge of the peril to be apprehended; (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger; and (3) conscious failure to act to avoid the peril. (*Bacon* v. *Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 859 [62 Cal.Rptr.2d 16] [recreational use immunity statute]; *Colich & Sons* v. *Pacific Bell, supra,* 198 Cal.App.3d at p. 1242; *New* v. *Consolidated Rock Products Co., supra,* 171 Cal.App.3d at pp. 689-690; *Morgan* v. *Southern Pacific Trans. Co., supra,* 37 Cal.App.3d at p. 1012.) As the foregoing suggests, willful misconduct does not invariably entail a subjective intent to injure. It is sufficient that a reasonable person under the same or similar circumstances would be aware of the highly dangerous character of his or her conduct. (*Pelletti* v. *Membrila* (1965) 234 Cal.App.2d 606, 611 [44 Cal.Rptr. 588] [automobile guest statute], relying upon Rest. Torts § 500, com. c, p. 1295; *New* v. *Consolidated Rock Products Co., supra,* 171 Cal.App.3d at p. 690; accord, *Cope* v. *Davison, supra,* 30 Cal.2d at p. 199; *Palazzi* v. *Air Cargo Terminals, Inc., supra,* 244 Cal.App.2d at pp. 195-196.)

■ Third, acts that are intended or likely to cause serious injury are not categorically wrongful in character and do not inevitably result in liability. For instance, a person is privileged to use "[a]ny necessary force" to protect or defend oneself or one's property from "wrongful injury." (§ 50;[11] see also Pen. Code, § 197.[12]) The right to use force against another has long been limited by the condition that the force be no more than " 'that which reasonably appears necessary, in view of all the circumstances of the case, to prevent the impending injury.' " (*Vaughn* v. *Jonas* (1948) 31 Cal.2d 586, 600 [191 P.2d 432]; *Boyer* v. *Waples* (1962) 206 Cal.App.2d 725, 727 [24 Cal.Rptr. 192]; *Fraguglia* v. *Sala* (1936) 17 Cal.App.2d 738, 745 [62 P.2d 783].) When the amount of force used is justifiable under the circumstances, it is not willful and the actor may escape liability for intentionally injurious conduct that is otherwise actionable. (See *Haeussler* v. *De Loretto* (1952)

---

[11]Section 50 provides in relevant part: "Any necessary force may be used to protect from wrongful injury the person or property of oneself, . . . or member of one's family, or of a ward, servant, master, or guest."

[12]Penal Code section 197 provides in the criminal context that even homicide is justifiable "[w]hen committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony . . . [¶] . . . or to do some great bodily injury, and [there is] imminent danger of such design being accomplished . . . ." (*Id.,* subds. 2, 3.)

109 Cal.App.2d 363, 364-365 [240 P.2d 654].) But if force is applied in excess of that which is justified, the actor remains subject to liability for the damages resulting from the excessive use of force. (See *Townsend* v. *Briggs* (1893) 99 Cal. 481, 483 [34 P. 116]; *Fraguglia* v. *Sala, supra,* 17 Cal.App.2d at p. 745; see also *Stowell* v. *Evans* (1931) 211 Cal. 565 [296 P. 278].) This is consonant with the general principle that an actor is subject to liability for an intentionally injurious act only if his or her conduct "is generally culpable and not justifiable under the circumstances." (Rest.2d Torts, § 870; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 17, pp. 77-79.) When an alleged act of self-defense or defense of property is at issue, the question of what force was reasonable and justified is peculiarly one for determination by the trier of fact. (*Fawkes* v. *Reynolds* (1922) 190 Cal. 204, 212-213 [211 P. 449]; *McLean* v. *Colf* (1918) 179 Cal. 237, 239 [176 P. 169]; *Boyer* v. *Waples, supra,* 206 Cal.App.2d at p. 730.)

If these well-established principles of tort law are what the Legislature had in mind when it provided that section 847 does not limit the liability "which otherwise exists for *willful, wanton,* or criminal conduct" (italics added), then it would appear that section 847 does not provide protection for intentional wrongful acts committed either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results.[13] So construed, section 847 necessarily implies that when the statutory predicates have been established, immunity is available not only for negligence, but also for acts that are intentionally injurious but justifiable under the circumstances. (See *White* v. *Western Title Ins. Co., supra,* 40 Cal.3d at pp. 881-882, fn. 4; *Building Profit Corp.* v. *Mortgage & Realty Trust, supra,* 36 Cal.App.4th at p. 689.)

In the proceedings below, the Court of Appeal determined by a split vote that while section 847 provides immunity for negligent acts, it does not purport to restrict liability for intentionally injurious conduct. Noting that Penal Code section 7 defines "willfully" as "simply a purpose or willingness to commit the act, or make the omission referred to" (Pen. Code, § 7, subd. 1), the court construed the term "willful" in section 847 to mean "simply intentionality or purposefulness." The court made special note that the proposed legislation was viewed by one legislative committee as partially resurrecting the "all-or-nothing" defense of "contributory negligence" that had been abrogated by *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], in favor of a system of comparative fault. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 200

---

[13]Although section 847 uses the word "conduct" rather than "misconduct," it is clear the language is intended to require "wrongful" acts in order to avoid application of the immunity to an injured person's claim.

(1985-1986 Reg. Sess.) as amended July 8, 1985, pp. 6-7.) After observing that contributory negligence was never a defense to intentionally injurious conduct, the court concluded that interpreting section 847 to immunize intentional acts would "go far beyond the limited restoration of the doctrine of contributory negligence that the Legislature had in mind." This analysis fails to persuade.

Logic and common sense support the conclusion that when the Legislature provided that section 847 "does not limit the liability of an owner or an owner's agent which otherwise exists for willful . . . conduct," it was referring to principles of law pertaining to *civil* liability for willful behavior, rather than the *criminal* definition of "willfully" that governs for purposes of the Penal Code. Moreover, if the Legislature had actually wanted to categorically exclude all "intentional" or "purposeful" conduct from the scope of the statutory immunity, it could easily have used such phraseology instead of declaring that the statute "does not limit the liability . . . which otherwise exists" for conduct that has long been understood to imply wrongfulness as well as intentionality. (See *Reuther* v. *Viall, supra,* 62 Cal.2d at p. 475 [describing willful misconduct as "intentional *wrongful* conduct, done either with a knowledge that serious injury to [another] probably will result, or with a wanton and reckless disregard of the possible results" (italics added)]; *Colich & Sons* v. *Pacific Bell, supra,* 198 Cal.App.3d at p. 1242; *Charpentier* v. *Von Geldern, supra,* 191 Cal.App.3d at p. 113; *Nazar* v. *Rodeffer, supra,* 184 Cal.App.3d at p. 552.) In any event, even if we were to accept the Court of Appeal's position that the statutory term "willful . . . conduct" is intended to refer to all injurious conduct that is intentional or purposeful, regardless of wrongfulness, we would not be free to ignore the "liability . . . which otherwise exists for" language which precedes it. (§ 847, subd. (f).) Thus, even employing that court's definition of willful conduct, we still would find that immunity is the rule under section 847 unless liability otherwise exists for the intentionally or purposefully injurious conduct at issue. As discussed above, a person is not necessarily liable for injuries caused by the intentional use of deadly or injurious force; the question of liability turns upon the circumstances of the particular case. (See *Vaughn* v. *Jonas, supra,* 31 Cal.2d at p. 600; *Boyer* v. *Waples, supra,* 206 Cal.App.2d at p. 727; *Fraguglia* v. *Sala, supra,* 17 Cal.App.2d at p. 745.)

The legislative analysis identified by the Court of Appeal fails to support its narrow view of the statute's application. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended July 8, 1985, pp. 6-7.) True, the analysis shows legislative contemplation that the proposed immunity would effectively resurrect the contributory negligence doctrine in those cases where negligence forms the basis of liability. But

there is nothing in the analysis to support the additional inference that the proposed immunity is intended to apply *exclusively* to claims of negligence. Instead, consistent with the statutory language, the various legislative committees repeatedly described the types of actions covered by the proposed immunity simply as actions for "any injury" or "injuries" or as actions on behalf of "injured persons" for "injury or death." Conspicuously absent from the legislative history is any mention of the notion that the only actions affected by the proposed immunity are those based upon negligence. Accordingly, we find no basis for implying such a restriction.

In advocating a far broader scope of immunity, defendants contend that section 847's reference to "willful, wanton, or criminal conduct" should be construed to mean intentional conduct that is "premeditated" and "outside the context of a reaction to a criminal attack." Under their construction, the exception would preclude immunity for the affirmative use of such mechanisms as spring guns, land mines and "tiger pits," which may result in indiscriminate violence to any person entering the property, but would bar liability whenever an owner intentionally injures a person in response to a statutorily enumerated crime. Defendants reason essentially as follows. When a perpetrator commits any of the felonies listed in subdivision (b) of section 847, it is reasonably foreseeable that intentional, violent, and injurious force by the victim may occur and, in fact, such force may be expected. Because the enumerated felonies "presuppose that a victim would be in a position to struggle, fight and respond violently to an already violent situation," an owner is entitled to immunity under section 847 without having to litigate the issues of reasonableness and justification for acts of alleged self-defense, so long as the fact of a plaintiff's conviction is established.

We have no doubt that the use of spring guns, land mines or tiger pits may constitute conduct that is "willful, wanton, or criminal" (see *People v. Ceballos* (1974) 12 Cal.3d 470 [116 Cal.Rptr. 233, 526 P.2d 241]) and therefore outside the intended scope of immunity. But there is nothing in section 847's language or history that indicates any legislative intent to confine the meaning of that phrase to the use of such mechanisms.

Furthermore, defendants do not explain what they mean exactly by conduct that is "premeditated"[14] and "outside the context of a reaction to a criminal attack," and it is unclear whether they intend to imply something

---

[14] The term "premeditated" is most often used in the criminal context to describe a component of first degree murder: "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree." (CALJIC No. 8.20 [defining deliberate and premeditated murder]; *People v.*

different than the commonly understood meaning of conduct that is "willful" or "wanton" in the civil liability context. But even if defendants' terms have their own distinct meaning, it is unlikely they accurately reflect the Legislature's intent, given section 847's more generalized reference to "willful, wanton, or criminal conduct." (§ 847, subd. (f).)

More significantly, there is nothing in the statutory language or history that suggests a legislative intent to bypass, rather than incorporate, the large and established body of law recognizing liability when unjustifiable force is used against a lawbreaker.[15] To the contrary, the language of the statute expressly provides it "does not limit the liability . . . *which otherwise exists* for willful, wanton, or criminal conduct." (§ 847, subd. (f), italics added.) The most straightforward and natural implication of that language is that section 847 contemplates the application of preexisting rules to determine liability for conduct that is willful, wanton, or criminal.

Defendants further contend that because section 847 affirmatively states that its limitation on liability "shall be in addition to any other available defense" (*id.*, subd. (g)), the statute must be read liberally to immunize conduct beyond the justifiable use of force in order to avoid a construction that merely duplicates the protections already afforded by section 50's privilege relating to necessary force. The argument is not convincing. The quoted language is typical of that used by the Legislature when enacting new rights and immunities in order to avoid the suggestion that the new legislation is intended to supplant existing ones. In any case, it can hardly be concluded that section 847's protections are redundant in light of section 50.

---

*Lucero* (1988) 44 Cal.3d 1006, 1021 [245 Cal.Rptr. 185, 750 P.2d 1342] [holding that CALJIC No. 8.20 is a correct statement of the law].) In that context, the word "premeditated" means "considered beforehand." (CALJIC No. 8.20.) For purposes of first degree murder, a deliberate and premeditated killing contemplates that "the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon preexisting reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation . . . ." (*Ibid.*)

[15]We note that at least two of the legislative analyses posed the following cryptic question: "In order to avoid procedural and other ambiguities, should this bill specifically address civil wrongdoing (e.g., unprivileged acts and intentional torts resulting in severe bodily injury or conversion of property whose value meets specified jurisdictional amounts) rather than criminal activity?" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, p. 4; Assem. 3d reading analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, p. 3.) It is unclear whether this inquiry refers to conduct of the landowner or to acts of the injured person. We believe the reference pertains to the latter because the question is located in the same numbered paragraphs as other questions relating to the issue of prosecution and conviction of the injured person. Neither side has offered any comment on this point.

As demonstrated above, section 847 provides broad protection against liability for negligence and is not restricted to acts of self-defense.[16]

To summarize our conclusions, section 847 limits the liability of an owner of any estate or other interest in real property for any injury or death that occurs upon that property during the course of or after the commission of any of the statutorily enumerated felonies by the injured person when the statutory predicates for the immunity have been established. (§ 847, subds. (a)-(e).) The statute does not limit the liability which otherwise exists for "willful" or "wanton" conduct, that is, intentional *wrongful* conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results.[17] (§ 847, subd. (f).) Thus, when the statutory predicates have been met, immunity is available not only for negligence, whether or not related to conditions, uses, structures, or activities of the property, but also for the intentional use of deadly or injurious force when such force is justifiable.

We now turn to the record in this case to determine whether defendants' motion for summary judgment was properly granted on the basis of section 847. Here, plaintiffs' complaint placed in issue the question of defendants' willful conduct. Consequently, once defendants offered evidence showing the applicability of section 847 and the absence of "willful, wanton, or criminal conduct" as contemplated under the statute, the burden shifted to plaintiffs to produce evidence sufficient to raise a triable issue of material fact. (Cf. *Bacon* v. *Southern Cal. Edison Co., supra,* 53 Cal.App.4th at p. 859 [affirming a grant of summary judgment on the basis of § 846 where the evidence at most established owner's negligence]; *Charpentier* v. *Von Geldern, supra,* 191 Cal.App.3d at p. 113 [same where no evidence tended to show willful or malicious conduct]; *O'Shea* v. *Claude C. Wood Co., supra,* 97 Cal.App.3d at p. 913 [same].) ▮ For the summary judgment motion to have properly succeeded, the evidence must have left no room for conflicting inferences as to material facts. "[S]ummary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).) ▮ On this appeal, we review the record de novo to determine whether

[16]Because this case comes to us on a grant of summary judgment, we have no occasion to consider whether section 847, in contrast to section 50, might require the plaintiff to bear the burden of proving the absence of justification at trial.

[17]In reaching this conclusion, we need not and do not decide what additional or other showing may be required for purposes of the statutory exclusion for "criminal" conduct. (§ 847, subd. (f).)

defendants have conclusively negated a necessary element of plaintiffs' case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

The record discloses that defendants supported their motion with the following evidence. Plaintiff was injured upon property leased to defendants John Pacheco and Ramon Block. Plaintiff had been charged by information with several statutorily enumerated felonies as a result of the events leading ·up to his injuries and was ultimately convicted of attempted grand theft. To establish the absence of "willful, wanton, or criminal conduct," defendants offered evidence showing that they used deadly force against plaintiff in reaction to an attempted armed robbery by plaintiff and three others.

While defendants' evidence certainly tends to support the conclusion that their use of force was justified in self-defense, other evidence cited by plaintiffs tends to refute that conclusion. In particular, defendant Robert Sharp III reported to the San Mateo County Sheriff's office that defendant Don Pacheco waited until three of the four alleged robbers, including the one with a pistol, exited the store before he grabbed a gun and shot at plaintiff as plaintiff ran out of the store. Plaintiff was shot in the back and rendered a paraplegic. And though Sharp claimed that plaintiff wielded a knife during the attempted robbery, Don Pacheco said he never saw plaintiff with a knife and the alleged knife was never found despite searches of plaintiff and the premises by law enforcement officers.[18]

---

[18]We note plaintiff submitted a declaration claiming that he did not participate in any crime or crimes against defendants and that he pleaded nolo contendere to one count of attempted grand theft as part of a plea bargain to obtain dismissal of other more serious charges and to avoid a trial and prison term. The language and history of section 847 make clear, however, that a person who is convicted of a statutorily enumerated offense pursuant to a plea bargain or a plea of nolo contendere is barred from arguing that the conviction may be disregarded in determining the statute's application. As legislative documents disclose, one purpose of section 847 is to facilitate the early dismissal of civil actions brought by plaintiff lawbreakers. To avoid the need for litigating a plaintiff's criminal wrongdoing in the civil action, the Legislature adopted the requirement of a conviction (§ 847, subd. (e); see Assem. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, pp. 3-4), with the express understanding that immunity would apply when convictions resulted from plea bargains (see Sen. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended July 8, 1985, p. 5; Assem. 3d reading analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, p. 3). Accordingly, under section 847 plaintiff may not contest involvement in an attempted grand theft and may not litigate the facts behind his nolo contendere plea to avoid triggering the statute's application.

■ On this record, we cannot say, *as a matter of law*, that the force used by defendants " 'reasonably appear[ed] necessary, in view of all the circumstances of the case, to prevent [an] impending injury.' "[19] (*Vaughn* v. *Jonas*, *supra*, 31 Cal.2d at p. 600.) We therefore agree with the Court of Appeal's unanimous determination that summary judgment was inappropriate.

### DISPOSITION

The judgment of the Court of Appeal is affirmed. The matter is remanded to that court with directions to remand to the superior court for further proceedings consistent with this opinion.

George, C. J., Mosk, J., Kennard, J., Chin, J., and Brown, J., concurred.

**WERDEGAR, J.,** Concurring and Dissenting.—I concur fully in the majority's result and reasoning, with a single exception: I dissent from footnote 18 of the majority opinion, which states, apparently for the guidance of the trial court on remand, that "under [Civil Code] section 847 plaintiff may not contest involvement in an attempted grand theft and may not litigate the facts behind his nolo contendere plea to avoid triggering the statute's application." (Maj. opn., *ante*, at p. 736, fn. 18.) I disagree because, under well-settled California law, a conviction by plea of guilty or no contest *does not preclude the convicted person from relitigating issues of guilty conduct or intent in a subsequent civil trial,* although the plea, whether guilty or no contest, is relevant and admissible against the convicted felon to show his or her factual guilt. (Pen. Code, § 1016; Evid. Code, § 1300; *Teitlebaum Furs, Inc.* v. *Dominion Ins. Co. Ltd.* (1962) 58 Cal.2d 601, 605-606 [25 Cal.Rptr.

---

[19]Defendants assert that the shooting of plaintiff was justified as a matter of law, relying primarily upon *Gilmore* v. *Superior Court* (1991) 230 Cal.App.3d 416 [281 Cal.Rptr. 343], *Nakashima* v. *Takase* (1935) 8 Cal.App.2d 35 [46 P.2d 1020], and *Brooks* v. *Sessagesimo* (1934) 139 Cal.App. 679 [34 P.2d 766]. Those decisions do not compel a summary judgment on the record before us. Unlike the instant case, neither *Nakashima* v. *Takase, supra,* 8 Cal.App.2d 35, nor *Brooks* v. *Sessagesimo, supra,* 139 Cal.App. 679, involved a situation where evidence showed that the plaintiff had been injured while fleeing the scene of a crime. Moreover, the judgment in favor of the defendant in the latter decision was affirmed based upon sufficiency of the evidence. *Gilmore* v. *Superior Court, supra,* 230 Cal.App.3d 416, was a wrongful death action in which the superior court denied the defendant's summary judgment motion but granted his motion for summary adjudication of the issue that the homicide was justifiable. There was no dispute regarding the facts supporting the defendant's summary judgment motion because the plaintiff failed to file any pleadings or exhibits in opposition to the motion and did not appear at the hearing thereon. The plaintiff did not challenge the superior court's finding of a justifiable homicide and also ignored the appellate court's invitation to file an opposition to the defendant's petition seeking a writ of mandate directing the superior court to grant the summary judgment motion. (*Id.* at pp. 418, 422.) Although the facts of that decision indicate that the decedent was killed while fleeing the defendant's home after an attempted burglary, we decline to find it dispositive given the unchallenged nature of the proceedings.

559, 375 P.2d 439]; *People* v. *Goodrum* (1991) 228 Cal.App.3d 397, 402-403 [279 Cal.Rptr. 120]; *Arenstein* v. *California State Bd. of Pharmacy* (1968) 265 Cal.App.2d 179, 190-191 [71 Cal.Rptr. 357]; see also 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 332(3), pp. 885-886.) Nothing in Civil Code section 847 abrogates or creates an exception to this established principle of California law.

In a long line of cases, stretching back at least to *Fawkes* v. *Reynolds* (1922) 190 Cal. 204 [211 P. 449], California courts have held convictions by plea are not conclusive, in a later civil action, of the convicted person's factual guilt. The facts necessarily admitted by the plea—the elements of the crime—may be relitigated, and the convicted person's plea explained as entered for reasons other than guilt.

In *Fawkes*, a dispute over irrigation rights had led to a fistfight. The civil defendant, Reynolds, had pleaded guilty, in a criminal prosecution, to assault and battery on the plaintiff, Fawkes. Despite the plea, Reynolds was not precluded from claiming, in defense of the civil suit, that he had used force in justified defense of his property rights. The civil jury, we held, was properly instructed that Reynolds's guilty plea " 'is not to be taken by you as being conclusive that the defendant was guilty of the crime of assault and battery against the plaintiff. This plea of guilty should only be regarded by you as an admission on the part of the defendant . . . .' " (190 Cal. at p. 213.)

The basic rationale for distinguishing convictions by plea from convictions after trial, which do have issue preclusion (collateral estoppel) effect in later civil trials, was explained by Justice Traynor for a virtually unanimous court (one justice concurred in the judgment without separate opinion) in *Teitlebaum Furs, Inc.* v. *Dominion Ins. Co. Ltd.*, *supra*, 58 Cal.2d at pages 605-606 (*Teitlebaum Furs*): "A plea of guilty is admissible in a subsequent civil action on the independent ground that it is an admission. It would not serve the policy underlying collateral estoppel, however, to make such a plea conclusive. 'The rule [of collateral estoppel] is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy.' [Citation.] 'This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case.' [Citation.] When a plea of guilty has been entered in the prior action, no issues have been 'drawn into controversy' by a 'full presentation' of the case. It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation. Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice [citation] combine to prohibit

the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action."[1]

The rule in *Teitlebaum Furs* "permits a party in a subsequent civil action to contest the truth of the matters admitted by his plea of guilty, present all facts surrounding the same including the nature of the charge and the plea, and explain why he entered such plea." (*Arenstein* v. *California State Bd. of Pharmacy*, *supra*, 265 Cal.App.2d at p. 191.) The Courts of Appeal have reiterated the rule on several occasions since and have applied it in a variety of circumstances, prohibiting the defensive as well as offensive use of collateral estoppel, and involving no contest as well as guilty pleas. (See, e.g., *County of Los Angeles* v. *Civil Service Com.* (1995) 39 Cal.App.4th 620, 629, fn. 8 [46 Cal.Rptr.2d 256] [stating rule as applicable to no contest plea]; *People* v. *Goodrum*, *supra*, 228 Cal.App.3d at pp. 401-402 [stating that defendant who pled no contest pursuant to plea bargain, and was misadvised as to collateral consequences of such a plea, would be permitted to explain in later civil action that his plea was not intended as an admission of guilt]; *Pease* v. *Pease* (1988) 201 Cal.App.3d 29, 32-34 [246 Cal.Rptr. 762] [applying *Teitlebaum Furs* rule to prevent even defensive use of collateral estoppel against convicted person; convicted person could maintain action on a cross-complaint despite prior plea's adverse determination of issues raised by cross-complaint]; *Arenstein* v. *California State Bd. of Pharmacy*, *supra*, 265 Cal.App.2d at p. 191 [holding superior court, in review of administrative license suspension proceeding, properly considered licensees' prior guilty pleas as evidentiary admissions only].)[2] On full reexamination, after open and reasoned debate, we might possibly decide to overturn this

---

[1]Justice Traynor refers only to pleas of guilty because prior to 1963 the plea of nolo contendere was not authorized by California statute. (4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Proceedings Before Trial, § 2133, p. 2502.) From 1963 to 1982, pleas of nolo contendere were recognized but, unlike pleas of guilty, they could not be used against the convicted person as admissions in a later civil action. (Historical Note, 50A West's Ann. Pen. Code*(1985 ed.) foll. § 1016, p. 487; Historical Note, 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1300, p. 397.) In 1982, Penal Code section 1016 and Evidence Code section 1300 were amended to place felony nolo contendere pleas on an equal footing with guilty pleas. (Stats. 1982, ch. 390, §§ 2, 3, pp. 1724-1725.) Penal Code section 1016 now provides that the "legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes." Nolo contendere pleas to crimes less than felonies remain, under Penal Code section 1016, unavailable for use as admissions in subsequent civil suits.

[2]California is far from unique in denying issue preclusion effect in later civil trials to convictions by plea. A Restatement comment opines that a conviction based on a guilty or no contest plea does not create issue preclusion "because the issue has not actually been litigated" (Rest.2d Judgments, § 85, com. b, p. 296), although the comment also suggests a guilty plea may create some other unspecified type of estoppel under "the law of evidence" (*ibid.*). Although courts in other jurisdictions are by no means unanimous, *Teitlebaum Furs*

long-standing rule of California law. We should certainly not do so sub silentio and without any stated reason.

The majority does not explicitly overrule the *Teitlebaum Furs* rule; indeed, the opinion does not even mention it. The majority purports, rather, to state a special rule for purposes of Civil Code section 847 (hereafter section 847), supported by the "language and history" of that statute. (Maj. opn., *ante*, at p. 736, fn. 18.) As to the statutory language, the majority points only to subdivision (e) of section 847, which provides: "The limitation on liability conferred by this section arises only upon the charge of a felony listed in subdivision (b) and the subsequent *conviction* of that felony or a lesser included felony or misdemeanor . . . ." (Italics added.) This provision, however, does not assist the majority, for, while it clearly makes a conviction *necessary* to application of section 847, it says nothing as to whether such a conviction is *sufficient* to establish the statutory immunity; nor does subdivision (e) speak to whether a conviction by guilty or no contest plea is conclusive of facts impliedly admitted by the plea. As we have just seen, our prior decisions definitively hold a guilty or no contest plea is *not* conclusive, in a later civil trial, of factual guilt. Nor can subdivision (e) be read to make a conviction, whether by plea or verdict, sufficient in itself to invoke civil immunity, since other provisions of the statute require, in addition to a conviction, a determination that the injury sued upon occurred during or after the commission of the felony and while the criminal was still on the defendant's property (§ 847, subds. (a), (c)), and a determination that the criminal conduct caused the injury sued upon (*id.*, subd. (d)).

As to legislative history, I believe the majority places more weight thereon than it will legitimately bear. With regard to the requirement, in subdivision (e) of section 847, of an existing conviction, the report cited by the majority notes only that the provision would serve "to verify that a felony was actually committed," and that the conviction requirement "eliminates some of the problems perceived in its earlier version that attempted to resolve a criminal issue in a civil action by the standard of proof beyond a reasonable doubt." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, p. 3.) With regard to

---

appears to represent the majority rule. (See *Aetna Cas. & Sur. Co.* v. *Niziolek* (1985) 395 Mass. 737 [481 N.E.2d 1356, 1363] [citing 39 states, in addition to Massachusetts, in which "a plea of guilty is admissible in evidence as an admission in subsequent civil litigation, but is not conclusive"]; *State Farm Fire and Cas. Co.* v. *Fullerton* (5th Cir. 1997) 118 F.3d 374, 378-381 [citing and discussing cases on both sides of the issue].) The *Teitlebaum Furs* approach has also been carefully examined and persuasively defended from a scholarly perspective. (See Shapiro, *Should a Guilty Plea Have Preclusive Effect?* (1984) 70 Iowa L.Rev. 27.)

guilty pleas, the cited Senate report noted, in the course of contrasting Assembly Bill No. 200, the bill that became section 847, with a competing bill (which excluded misdemeanor convictions), that under Assembly Bill No. 200 "a person charged with burglary but convicted of misdemeanor trespass would be barred from civil recovery. Proponents assert that this provision is necessary to accommodate cases where the defendant pleads to a lesser offense or is convicted of a lesser included offense." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended July 8, 1985, p. 5.) The cited Assembly report observes merely that "[t]he bill also accommodates those cases in which a felony charge is reduced to a lesser offense by plea-bargaining and a conviction is subsequently obtained." (Assem. 3d reading analysis of Assem. Bill No. 200 (1985-1986 Reg. Sess.) as amended May 30, 1985, p. 3.)

To my reading, these comments in staff reports fall far short of stating, or even implying, that the existence of a prior conviction, obtained by a plea of guilty or no contest, would legally preclude the convicted person from explaining his or her plea or from denying, in order to avoid application of section 847, that he or she committed the crime to which he or she pled. Of course, relitigation of guilt issues *is* precluded when the conviction was the result of a trial (see *Teitlebaum Furs, supra*, 58 Cal.2d at pp. 603-605), and legislators may have assumed, for that reason, that by requiring an existing conviction for application of section 847 they would in most cases avoid relitigation of guilt. To the extent any members also assumed that relitigation of guilt would be precluded even when the prior conviction was by plea—a premise I do not find particularly reflected in the cited legislative reports—their assumption was unwarranted, for they neglected to enact any provision so stating, and the general law of California is, as discussed earlier, to the contrary.

In interpreting a statute, our role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." (Code Civ. Proc., § 1858.) A provision precluding relitigation of factual guilt after conviction on the basis of a guilty or no contest plea would, no doubt, likely contribute somewhat to the pretrial disposition of civil suits by injured criminals, a result in accord with the overall spirit of section 847. The Legislature, however, did not enact such a provision. Unless we are to overrule a long and well-reasoned line of decisions from this court and the Courts of Appeal, we can find no such preclusion as a matter of collateral estoppel.

For these reasons, I dissent from the judgment insofar as it precludes plaintiff, on remand, from litigating the facts behind, or the reasons for, his

plea of nolo contendere to attempted grand theft. In all other respects, I concur.

Appellants' petition for a rehearing was denied February 17, 1999. Kennard, J., was of the opinion that the petition should be granted.